# Southern Railway Company v. Ables.

*Bill to Enjoin Vacation of Street and for Damages.*

(Decided Dec. 19, 1907.   45 South. 234.)

1. *Eminent Domain; Vacation of Street; Property Not Abutting; Injunction.*—Section 235, Constitution 1901, does not extend its protection to one whose property is not abutting on the street vacated. and a bill filed under said section to enjoin the vacation of a street is defective if it fails to allege that complainant is an abutting owner.

2. *Municipal Corporations; Streets; Vacation of; Power Granted.* —The legislature has power to vacate or discontinue streets and highways, and may authorize municipal corporations to do. so where there is no constitutional inhibition thereon.

3. *Same; Effect.*—Where the charter of a city authorizes it to abandon or vacate any of its streets or parts of streets a valid ordinance intended as a bona fide vacation or abandonment of a particular street or part of a street, does not create or become a nuisance.

4. *Injunction; Vacation of Street; Ground for Relief.*—Where it does not appear by allegation or proof that, on account of the vacation or abandonment of a street, complainant's damage will be different in kind and not merely in degree from that suffered by the public generally, and that it will not be such as to preclude compensation in a single action at law, such complainant will not be entitled to injunctive relief on account of the vacation or abandonment of the street.

5. *Same; Grounds; Imminency of Act.*—The fact that a city has agreed or contracted to construct an overhead crossing whenever it becomes necessary so to do, in the absence of a showing that such construction has become necessary or that there is an attempt or intention to construct it, affords no ground for injunctive relief.

6. *Same; Pleading; Allegations Construed.*—The allegations of the bill of complaint in this case construed not to allege that complain-

ant's property abutted the portion of the street intended to be vacated, and hence, not to make out a case for relief under section 235, Constitution, 1901.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Action by Charles Edward Albes against the Southern Railway Company and others to enjoin the vacation of a street, etc. From a decree overruling a motion to dismiss, and overruling demurrers to the bill, defendants appeal. Reversed and rendered.

The allegations of the bill are as follows:

(1) That orator is a citizen of Morgan county under the age of 21 years.

(2) That the city of Decatur is a municipal corporation, authorized by its charter to sue and be sued under the name of the "Mayor and Council of the City of Decatur," and is invested with the power of eminent domain. The Southern Railway Company is a corporation organized under the laws of the state of Virginia, and under the law invested with the power of eminent domain. This section is amended by adding the following words: "Said Southern Railway Company is now operating a line of railway from the city of Chattanooga, in the state of Tennessee, to and through the city of Decatur, Alabama, and on to Memphis in the state of Tennessee."

(3) That orator is seized and possessed and the owner in fee of the following described lot or parcel of land, situated, lying and being within the corporate limits of the city of Decatur. (Here follows the description.) Said lot of land fronts on the right of way of the Southern Railway Company 259 feet, extending from La Fayette street on the north to Vine street on the south, and extends back and abuts on La Fayette street a distance of 206 feet to Sycamore street, and extends

along and abuts on Vine street a distance of 63 feet. That on said lot orator has a two and three story building which he uses as a hotel for the accommodation of the traveling public for hire, called the "Bismarck Hotel." Next to said hotel on said lot orator has a two-story building which he uses for a saloon for the sale of li quors of all kinds, and orator avers that he is now doing and has heretofore done a lucrative business, both in said hotel and saloon. Said hotel and saloon are located on the corner of said lot or parcel of land at the intersection of La Fayette street and the right of way of respondent the Southern Railway, along which right of way runs the railroad track of said respondent. On the corner of said lot, fronting on the right of way of said railway and at its intersection with Vine street, orator has no buildings at this time; but orator avers that said corner is within about 50 feet of the Southern Express Company's office, which is in Decatur, and within about 60 feet of the passenger station of the Louisville & Nashville Railroad Co., and of the respondent the Southern Railway, and that said passenger station is frequented daily by a large number of people. That the lot at said corner is near the center of the town, is level, located in a populous neighborhood, and at the intersection of Vine street with the right of way of the respondent the Southern Railway Company, and, being so situated, is well adapted to being improved, and especially is it suited for store buildings.

(4) Immediately in front of orator's said lot and hotel are the railroad tracks of the respondent the Southern Railway and the tracks of the Louisville & Nashville Railroad Company, and in front of said hotel at about a distance of 100 feet is the new Union Passenger Station, which is now being erected by respondent the Southern Railway Company for the use of itself and the said

Louisville & Nashville Railroad Company. Said Union Station is on the other side of the track from orator's lot and hotel. La Fayette street in said city is about 30 feet in width, and runs substantially east and west, and is one of the main, if not the principal thoroughfares of the city connecting the western part with the eastern part of the city, and said street is on the north side of orator's lot, and your orator's lot abuts on said street a distance of 206 feet. Vine street, in the city of Decatur, is about 40 feet in width, about 264 feet south of La Fayette street, and runs substantially east and west, and is one of the principal thoroughfares in said city connecting the eastern part with the western part of the city, and bounds orator's lot on the south; said lot abutting thereon 63 feet.

(5) The city of Decatur has a population of about 5,000 people and does a large amount of business. The main street of said city, and the street upon which most of the business houses are located and where the principal trade and traffic is done, is called "Bank Street," and said street is about 99 feet in width, runs substantially north and south, and extends from the Tennessee river on the north to the city of New Decatur on the south. That the city of New Decatur has a population of about 10,000 people and does a large amount of business. Said Bank street lies east of said orator's lot, and of the right of way and the railroad tracks and Union Passenger Station of the Southern and Louisville & Nashville Railroads, at a distance from orator's hotel and lots of about 500 feet. The right of way and tracks of respondent Southern Railway lie east of orator's lot, between said lot and said Bank street, and between the principal business and dwelling part of the city of Decatur and said lot. Said right of way and railroad tracks

run substantially northeast and southwest, and bisect and cut through said La Fayette and Vine streets.

(6) For more than 20 years said La Fayette and Vine streets have been dedicated to the public and used by the public as streets in the city of Decatur, and said streets are public highways in said city.

(7) That in front of his hotel, on said above described lot, and between said buildings and respondent the Southern Railway Company's right of way, is an average distance of from 8 to 10 feet. Said ground is a part of orator's lot, and the means of access to said hotel from La Fayette street to customers on foot and in vehicles, and orator avers that he can step from the corner of his said lot on either Vine or La Fayette street across defendant's right of way, and that heretofore at said corners it has been used when desired to enter upon said lots from said streets at said crossing; that said La Fayette and Vine streets are the only streets that are open to him for communication with Bank street, and the entire eastern part of said city, and for communication by citizens of Decatur with your orator, either as patrons of orator's hotel or as customers at his saloon, unless they cross the railroad tracks and the right of way of the Southern and Louisville & Nashville Railway Company and go through the new Union Passenger Station now being built as aforesaid, which the respondent the Southern Railway Company can prohibit and prevent at any time that it sees proper so to do, unless they should approach your orator's property from the west, which would be in the rear of said hotel and saloon, and to do this customers and guests from Bank street and the eastern portion of said city would have to go north to Church street, across the right of way and track of the railroad on a bridge at a high elevation, go down Sycamore street a distance of about one block, thence

down said street about a block to La Fayette street, thence into the rear of orator's hotel, or by going down La Fayette street a distance of about 206 feet could enter at the front of the hotel, and if customres or guests of your orator from Bank street and the eastern portion of the city did not take this course to reach your oraotr's hotel or saloon as just described then they would have to go south, cross the Louisville & Nashville track at what is called the "underpass," and thence across country for a great distance, and thence down Vine street to said lot, which would be a distance of fully a mile out of the way to reach said lot.

(8) That on May 31, 1905, the mayor of the city of Decatur entered into a contract or written agreement, as is shown by Exhibit A hereto attached and made a part hereof, and to which agreement the Southern Railway Company was the other party. On the 6th day of June the mayor and city council of Decatur passed a resolution, as shown by Exhibit B hereto attached and made a part hereof, and that under this contract and resolution the Southern Railway Company claims that that part of Vine street between Railroad and Sycamore streets formerly covered by respondent's right of way has been abolished and vacated, and said respondent claims the right to prevent the use of said street across its right of way by citizens of Decatur on foot or in vehicles, and to prevent the citizens from crossing and recrossing said right of way at said place where Vine street crosses said right of way, and under the same contract and resolution the Southern Railway claims the right to prohibit the use of La Fayette street where it crosses respondent's right of way as a street. Said responden is now taking steps to permanently close up as a street that part of Vine street extending across its right of way, and is plowing up and excavating a por-

tion of La Fayette street which is covered by its right of way, so as to make said street at its crossing impracticable to all persons desiring to cross there.

(9) If respondent the Southern Railway is permitted to close up and vacate that portion of Vine street extending across its right of way, as it is threatening now to do, and to prohibit the use of that part of La Fayette street extending across its right of way as a street to ciizens on horseback and in vehicles, as it claims that it has a right to do, it will seriously injure and damage your orator's property, in this: It will interfere and hamper access to and egress from your orator's said lot to Bank street and the business portion of the city of Decatur. It will injure the said lot, in that it will make said hotel and saloon less accessible to the public, and thereby decrease the actual value of said lot. It will further injure said lot, in that it will practically destroy it as a suitable place on which to erect stores, because said stores, if erected fronting said right of way, would be approachable from one direction only—from the rear. It would injure said lot, in that said hotel and saloon would have to be approached by customers and guests in vehicles from the rear, and customers and guests in vehicles or on horseback would have to go out of the way as set forth to get to orator's lot at all. It is averred on information and belief that if the road is allowed to proceed to close up these streets orator will be damaged in the sum of $5,000.

(10) It is stated on information and advice that the city of Decatur has no legal right to donate to the Southern Railway Company that portion of La Fayette street covered by the right of way.

(11) Neither the city of Decatur nor the Southern Railway Company have resorted to condemnation pro-

34 R

ceedings to condemn orator's interest in said streets, nor have they paid or offered to pay orator any damages that he may suffer by the vacation of said street.

(12) It is averred that under the contract and resolution the Southern Railway Company has a substantial interest in vacating or closing up that part of Vine and La Fayette streets as is set out in the bill, and that it is now at work under said contract or agreement, building said depot therein referred to and excavating the ground to make La Fayette street suitable for passage for pedestrians only, and to close up entirely Vine street where it crosses said respondent's right of way.

(13) It is averred that under said contract and agreement the city of Decatur will construct a bridge or overhead structure at the crossing of La Fayette street over the railway track and right of way of the Southern Railway, where said street crosses said tracks, and if said structure is erected as agreed to in the contract it will extend from some point in La Fayette at or near its intersection with South Railroad street, over and across the right of way and railroad track of respondent the Southern Railway, and extend to and along and possibly beyond orator's said hotel building, located as aforesaid along said street, and when so constructed would obstruct and intercept the light and air from said building on La Fayette street, and render the lower story of said hotel unduly shaded, by keeping the light out of the windows thereof, and render said lower story damp and unwholesome.

The prayer is to restrain and enjoin the respondents from vacating Vine street where it crosses the right of way of the Southern Railway Company, and from vacating La Fayette street, until compensation is first made to orator for damage which will accrue by such action; that the respondent city of Decatur be restrained and

enjoined from donating to the Southern Railway Company that portion of La Fayette covered by the right of way; that if said proposed vacation is made respondents be required to pay orator all damages he will suffer in future by reason of said vacation of said street, and if respondent Southern Railway Company should not in equity and good conscience be required to pay said damages then that the city of Decatur, before said vacation be allowed and before any further work be done, be required to pay said damages as orator will suffer in the future by reason of the doing of the work, or which he has already suffered on account of it, and to restrain and enjoin both respondents, their agents, servants, or employes, from interfering in any manner, or from digging, excavating, or plowing up said Vine or La Fayette street where they cross said right of way, until orator has first been paid the damages resulting from said work, and that the city council of Decatur be restrained from erecting or causing to be erected said bridge or structure across the tracks of respondent's railway until complainant has been paid the damages that will result from said structure. The contract and agreement referred to was one between the city of Decatur and the Southern Railway, by which the Southern Railway agreed to erect a Union Passenger Station for itself and the Louisville & Nashville Railroad at a certain place and according to certain plans and specifications, and the city of Decatur agreed to permanently vacate and close Vine street where it crosses the right of way and to close La Fayette street to the passage of vehicles where the same crosses the right of way of the Southern Railway Company, and, when it became necessary to do so, to erect a bridge or overhead structure across the railroad on La Fayette street. The ordinance referred to

was the carrying into effect of the agreement on the part of the city.

The following, among other demurrers, were interposed to the bill: "(3) It appears therefrom that complainant has a plain and adequate remedy at law by action for damages." "(5) It does not appear therefrom that there has been had or threatened such taking of or proximate injury to complainant's property as entitles complainant to compensation or injunctive process under statutory or constitutional provisions relating to eminent domain." "(7) It does not appear therefrom that the injury to complainant from said alleged acts of defendant will be irreparable, or such that complete compensation therefor cannot be obtained in a single action at law." "(11) It does not appear therefrom that complainant's property abuts on that part of Vine or La Fayette street on or across which defendant has laid or proposes to lay the track, or has occupied or proposes to occupy with its railroad or depot." There was also motion to dismiss for want of equity.

From a decree overruling the motion to dismiss for want of equity, and overruling the demurrers, this appeal is prosecuted.

HUMES & SPEAKE, for appellant Southern Railway Company; CALLAHAN & HARRIS, for appellant, City of Decatur. The case of *Dennis v. M. & M. Ry. Co.*, 137 Ala. 649, seems to us conclusive in support of demurrers and motions in this case. An injunction will not be granted where the injuries are merely consequential since the court of law is the proper tribunal in such a case.—Joyce on Elec. Law, 1022. Where the right is doubtful or where the injury is not irreparable, the same is true.—*Halsey v. R. R. Co.*, 20 Atl. 861; *Haggerty v. Lee*, 17 Atl. 826. The state has the absolute right to use and control the public thoroughfares for all public pur-

poses, and a public improvement authorized thereon can not be enjoined.—*Perry v. R. R. Co.,* 55 Ala. 413; *Western Ry. v. A. G. S. R. R. Co.,* 96 Ala. 272; *Southern Bell v. Francis,* 109 Ala. 224; s. c. 41 South. 1003. The action of the city in vacating streets is lawful under the grant of powers in its charter, and will not constitute a nuisance.—*Transportation Co. v. Chicago,* 99 U. S. 640; *Cicero Lbr. Co. v. Cicero,* 68 Am. St. Rep. 161. The taking was not of private property for public use.—*Coster v. Tide Water Co.,* 18 N. J. Eq. 54; Cooley's Const. Lim. 54; *Board of Health v. Van Hausman,* 14 L. R. A. 116. The term public benefit and public use are not synonymous terms.—*In re Niagara Falls Ry. Co.,* 15 N. E. 429; Lewis Eminent Domain, 222; *Gaylord v. Sanitary District,* 98 Am. St. Rep. 240; *U. S. v. Pac. Ry. Co.,* 120 U. S. 229; *Paul v. Carver,* 64 Am. Dec. 649. The case of the *City of St. Louis v. O'Flynn,* 59 Am. Rep. 795, as is the case of *McGhee's Appeals,* 114 Pa. 477, very much like the case at bar. The plaintiff's damages were in no wise special as distinguished from that suffered by the public generally.—*Cram v. Laconia,* 57 L. R. A. 282 and authorities cited: 15 Cyc. 665; *Buhl v. Fort St. Union Depot Co.,* 23 L. R. A. 392; *Glasgow, et al. v. City of St. Louis, et al.,* 17 S. W. 744; *Henrick v. St. Louis,* 46 Am. St. Rep. 490; *Davis v. Hampshire Co.,* 11 L. R. A. 750; *E. St. Louis v. O'Flynn,* 59 Am. St. Rep. 795; *City of Chicago v. Union Bldg. Assn.,* 40 Am. Rep. 598; *Fearing v. Irwin,* 55 N. Y. 480; *Coster v. Mayor, etc.,* 43 N. Y. 414; *Datzer v. Ind. Un. Ry. Co.,* 50 Am. St. Rep. 343; *Smith v. Boston,* 7 Cush. 254.

BROWN & KYLE, for appellee. The facts made by the bill constitute a taking of property within the constitutional inhibition.—*Chicago v. Taylor,* 125 U. S. 161; *M. & C. R. R. Co. v. S. & T. Ry. Co.,* 96 Ala. 577; Elliott

on Roads & Streets (2nd Ed.), sec. 877; 15 Cyc. 652-3.
Under the Alabama authorities compensation must be
first made before the taking or injury is done.—*E. & W.
Ry. Co. v. E. T. V. & G. Ry. Co.,* 75 Ala. 276; *C. & W.
Ry. Co. v. Witherow,* 82 Ala. 190; *Montgomery v. Lemle,*
121 Ala. 609; *New Decatur v. Scharfenburg,* in MS.
*Jones v. Wright,* 140 Ala. 272. It is conceded that in or-
der to maintain a bill to abate a public nuisance a pri-
vate individual must sustain some peculiar or special
damage different from that suffered by the public at
large. This, we insist, is shown by the allegations of the
bill.—*Ry. Co. v. Eberlin,* 59 mA. Rep. 229; *Chicago v.
Bucky,* 49 Am. St. Rep. 142; *Pa. Co. v. Stanley,* 10 Ind.
App. 421; *Dantzler v. I. U. Ry. Co.,* 50 Am. St. Rep. 346;
*Lindsey v. City of Omaha,* 27 Am. St. Rep. 419; *R. R.
Co. v. Waylor,* 2 Ohio St. 235; *R. R. Co. v. Boenar,* 51
N. W. 842; 29 Am. St. Rep. 355. But whatever may be
the rule in other jurisdictions, as the bill clearly shows
that complainant would have to take a more circuitous
route to get to and from the business portion of Deca-
tur, it is well settled in Alabama that such being the
facts, it would constitute a special injury and entitle
complainant to relief.—*Sloss-Sheffield Steel and Iron
Co. v. Johnson,* 41 So. Rep. 907; *Jones v. Bright,* 140
Ala. 272; *Stutson v. Faron,* Amer. Dec. 123 and note;
*Henrich v. St. Louis,* 46 Amer. St. Rep. 492; 15 Cyc. 666.
The other feature of the bill as set forth by the amend-
ment makes a case for equitable relief, because of the
diminution or obstruction of light and air.—15 Cyc.
746; *Story v. R. R. Co.,* 43 Am. Rep. 146; *Abendroth v.
Ry. Co.,* 19 Am. St. Rep. 461; *Railroad Co. v. Hartley,*
16 Am. Rep. 625; 3 Am. & Eng. Dec. in Equity, 630.
Complainant owning the fee to the middle of the street,
the Legislature could not confer on the mayor and coun-
cil of Decatur authority to vacate said street.—2 Dil-

lons Munic. Corp. (4th Ed.), Sec. 651; *Douglass v. City Council,* 118 Ala. 599-611; *City of Mobile v. L. & N. R. R. Co.,* 124 Ala. 133.

ANDERSON, J.—Conceding that the abutting owner of the street has such a private interest therein as would entitle him to compensation under section 235 of the Constitution of 1901, before a vacation thereof by the municipality, the complainant does not bring himself within the protection of said section, as the bill does not aver that he is an abutting owner on those particular parts of the street that were vacated.—Elliott on Roads & Streets (2d Ed.), §§ 877, 878; *Dennis v. M. & M. R. R. Co.,* 137 Ala. 649, 35 South. 30, 97 Am. St. Rep. 69; *Montgomery v. Townsend,* 80 Ala. 489, 2 South. 155, 60 Am. Rep. 112; *Decatur v. Karcher,* 112 Ala. 676, 21 South. 825; Lewis on Em. Dom. § 134; *Transportation Co. v. Chicago,* 99 U. S. 635, 25 L. Ed. 336; *Buhl v. Ft. Union R. R.,* 98 Mich. 596, 57 N. W. 829, 23 L. R. A. 392; *Chicago v. Union Bldg. Association,* 102 Ill. 379, 40 Am. Rep. 598; *East St. Louis v. O'Flynn,* 119 Ill. 200, 10 N. E. 395, 59 Am. Rep. 795. The demurrer to the bill, testing the right to injunctive relief based upon the Constitution with respect to eminent domain, should have been sustained.

Nor does the bill make out a case for injunctive relief against a common law nuisance. The Legislature, by Acts 1890, p. 1310, authorized the city of Decatur to abandon and vacate the streets or any part thereof, and if the ordinance involved was in compliance with the law, and intended as a bona fide vacation by the municipality of certain parts of the streets in question, there could be no nuisance. "The plenary power of the Legislature over streets and highways is such that it may, in the absence of special constitutional restrictions, vacate

or discontinue them, or invest municipal corporations with this authority."—Dillon, Municipal Corporations, 666; Elliott on Roads and Streets, 875; *McCain v. State*, 62 Ala. 138; *Mayor of Birmingham v. Klein*, 89 Ala. 465, 7 South. 386, 8 L. R. A. 369; *City of Montgomery v. Parker*, 114 Ala. 126, 21 South. 452, 62 Am. St. Rep. 95; *McGee's Appeal*, 114 Pa. 470, 8 Atl. 237. On the other hand, conceding that the ordinance was not a bona fide vacation of certain parts of the streets, but was a mere effort on the part of the city to devote those parts of the streets to the use of the railway company, and was unauthorized (*McCain's Case, supra;* Elliott on Roads and Streets, 875; *Smith v. McDowell*, 148 Ill. 51, 35 N. E. 141, 22 L. R. A. 393; *Glasgow v. St. Louis*, 87 Mo. 678), it could avail the complainant nothing under the averments of his bill.

The complainant would not be entitled to equitable relief, even if the ordinance was unauthorized and the vacation or obstruction amounted to a nuisance, without averment and proof that he will not only be damaged different in kind, as contradistinguished from degree, from the public generally, but that his damage will be of such a character as he cannot be compensated in a single action at law. The only damage charged in the bill is the diminution in value to complainant's lots, and, while it may be greater in degree, it is not different from that sustained by the public generally. The bill claims no damages that cannot be measured and recovered in a single action at law. The bill does aver that complainant is in the hotel and saloon business and that these places will be less accessible to the public, but makes no claim for injury to his business, and grounds his damages solely and entirely upon a diminution to the value of his lots.—*Dennis v. M. & M. R. R., supra,* and cases there cited.

[Salmon, Administrator v. Wynn, Administrator.]

We agree with the chancellor in holding that the amendment did not add equity to the bill. The injury feared by the construction of the bridge is merely imaginary, and not even threatened at present. The contract provides that it is only to be constructed "if it becomes necessary," and it may never become necessary. The amendment does not aver that it has become necessary, or that there is any attempt or intention to erect the bridge. "Sufficient unto the day is the evil thereof."

Counsel for complainant, in brief upon application for rehearing, insists that the bill avers that complainant's lots abut the vacated parts of the streets. We are not able to so construe the bill. We have carefully read and reread the same, and it strikes us as an attempt on the part of the pleader to place the property as near the vacated parts of the streets as possible, but to purposely avoid averring that it abuts at the points vacated.

The chancellor erred in not sustaining the demurrers to the bill, and a decree will be here rendered sustaining demurrers Nos. 11, 7, 5, and 3.

Reversed and rendered.

TYSON, C. J., and HARALSON, SIMPSON, DENSON, and McCLELLAN, JJ., concur.