# State, *Ex rel.* Attorney General *v.* Louisville & N. R. R. Co. *et al.*

## *Bill to Remove Obstruction From Public Street*

(Decided June 18, 1908.    Rehearing denied Jan. 14, 1909.
48 South. 391.)

1. *Municipal Corporations; Vacating Street; Power of City.*—Unless specially authorized by the legislature, a city cannot permit the obstruction of a street by allowing a depot to be extended across it.

2. *Same; Power of Legislature.*—The legislature can vacate a street where it crosses a railroad and permit a depot to be erected thereon, and it can delegate this power to a city.

3. *Same; Statute.*—The Act of Dec. 10, 1900 (Acts 1900-01, p. 239) covers the act of the city council in attempting to vacate a street where it crosses the railroad in said city, and to give to the railroad company the right to occupy it with a depot; since the legislature can legalize the void act of the city council in attempting without authority to grant a railroad company power to occupy a street where it crosses the track.

4. *Statutes; Single Subject.*—The act of Dec. 10, 1900, (Acts 1900-01, p. 239) does not contain more than one subject, and is constitutional.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SARE.

Bill by the state on the relation of the Attorney General against the L. & N. R. R. Co., et al., to require the opening of Lee street in the city of Montgomery which had been closed by the construction of the freight depot of the L. & N. R. R. Co., across it, under an ordinance of the city of Montgomery.    From a judgment for respondent relator appeals.    Affirmed.

ALEXANDER M. GARBER, Attorney-General, THOMAS W. MARTIN, Assistant Attorney General, MARKS & SAYRE, RUSHTON & COLEMAN, H. F. REESE, and S. H. DENT, JR., for appellant.    Counsel insist that the city of Montgomery had no authority to vacate the street by contract

ordinance or otherwise.—*Smith v. McDowell,* 148 Ill. 51; 1 Dillon's Munic. Corp. sec. 66; *Burlingtoon v. P. A. R. R. Co.,* 56 N. J. E.; *Trustees v. Hoboken,* 4 Vroom; *Douglass v. City Council of Montgomery,* 118 Ala. 606; *City Council v. Parker,* 114 Ala. 118; *Southern Ry. Co. v. Albes, in M. S.* The original ordinance being void, the legislature could not validate it by the act passed.— *Lindsey v. Loan Assn.,* 120 Ala. 156. The act in question did not have the effect to enlarge the charter powers of the city.—*L. & N. R. R. Co. v. Kentucky,* 161 U. S. 677; *Charles River Bridge Co. v. Warren Bridge,* 11 Pet. 420. A void ordinance cannot be aided by a curative act. The ordinance passed by the City Council of Montgomery in June, 1906, was not merely voidable, but absolutely void.—*Webb v. Demopolis,* 87 Ala. 659; *Ib.,* 95 Ala. 116; *Costello v. State,* 108 Ala. 45; *Perry v. N. O. R. R.,* 55 Ala. 413; *Reed v. Birmingham,* 92 Ala. 339; *Chicago v. Paul,* 34 L. R. A. 184; *Smith v. McDowell,* 22 L. R. A. 393; *Daly v. Georgia,* 12 Am. St. Rep. 286. The text writers are uniform in laying down the doctrine that a curative statute is inoperative to supply an original want of jurisdiction to act at all.—Cooley on Taxation, 227; Dillion on Mun. Corp. sections 89, 475; Endlitch on Statutes, sections 270, 291; Lewis-Southerland on Stat. Construction, section 675; *Hasbrouck v. Milwaukee,* 80 Am. Dec. 718; *Strosser v. Ft. Wayne,* 100 Ind. 445; *Connors v. Lathrop,* 9 Kan. 453; *Atkinson v. Gallipolis,* 7 O. 218; *Warren v. Lyons,* 22 Ia. 354; *St. Paul v. Chicago R. R. Co.,* 34 L. R. A. 180; *Smith v. McDowell,* 22 L. R A. 393; *Revelle v. The People,* 69 Am. St. Rep. 276, and note.

GEORGE W. JONES, and KNOX, ACKER & BLACKMON, for appellee. On the question of the power of the city to vacate the streets, the following cases are cited as

upholding the position contended for by appellees that the ordinance is valid.—*Knapp, et al. v. City of St. Louis,* 55 S. W. 104; *Heinrich v. City of St. Louis,* 125 Mo. 424; *Christian v. City of St. Louis,* 127 Mo. 114; *Glasgow v. City of St. Louis,* 17 S. W. Rep. 743; *State v. City of Elizabeth,* 24 Atl. Rep. 495, 497; *Villiage of Bellevue Improvement Co.,* 90 N. W. Rep. 1002, 1004; *Meyer v. Villiage of Teutopolis,* 23 N. E. Rep. 651; *Morris & Cummings Dredging Co. v. Mayor of Jersey City,* 46 Atl. Rep. 609, 610, 611; *Parker v. Catholic Bishop of Chicago,* 34 N. E. Rep. 473; *City of Omaha v. Flood,* 77 N. W. Rep. 379; *People, ex rel Bransom v. Walsh,* 96 Ill. 732, 36 Am. Rep. 135; *West Chicago Park Com. v. Mc Mullen,* 10 L. R. A. 215; *Symons v. City of San Francisco,* 42 Pac. Rep. 913, 914; *Mobile & Montgomery Railway Co. v. Alabama Midland Ry. Co.,* 116 Ala. 51, 66.

HARALSON, J.—1. The questions presented on this appeal are, first, whether the city council of Montgomery had the power, under its charter, to authorize the obstruction of Lee street in said city, by the erection thereon, at the foot of said street, of the freight depot of the Mobile & Montgomery Railway Company or of the Louisville & Nashville Railroad Company—the latter being the lessee of the first named railroad company—which depot extends entirely across said street at its foot; and, second, if it did not have such authority, whether the act of the Legislature of December 10, 1900 (Laws 1900-01, p. 239), "to ratify, legalize and confirm all grants, rights, privileges, and franchises, heretofore granted or attempted to be granted to railroads by the city council of Montgomery," was constitutionally enacted, and if so, if it cured and vitalized such lack of authority, and rendered the action of the city council in granting the right to obstruct said street valid, as

though the city had such authority under its charter, in the beginning.

The court below held, that such authority in the city did not exist under its charter, and from such want of authority, the act of the city granting that right was void, but that the legislative enactment of December 10, 1900, was validly enacted, and cured that defect or want of authority and rendered the contract of the city with the railroad companies valid and binding.

2. As to the first of these propositions, it is scarcely necessary to enter upon its consideration, since the question is so well settled by the decisions of this court, and of other jurisdictions, and by the text writers.

The queston received consideration at our hands in the case of *Douglass v. City Council of Montgomery*, 118 Ala. 599, 24 South. 745, 43 L. R. A. 376, where it was held, that municipal corporations hold title to streets, public squares, and parks, in trust for the public, and when lands have been dedicated for such purposes, the municipality has no power, unless specially authorized by the Legislature, to sell such lands for its own benefit, or to appropriate them for the use and benefit of private persons or corporations, or in any way divert them from the uses to which they were originally dedicated.— *Webb v. Demopolis*, 95 Ala. 116, 13 South. 289, 21 L. R. A. 62 2 Dillon on Munic. Corp. §§ 575, 650; 15 A. & E. Ency. Law (1st Ed.) 1064; 17 A. & E. Ency. Law (1st Ed.) 417.

It is not pretended that the city council had any authority in its character to dispose of this street in the manner it did, or to abolish it, and under the authorities, its attempt to do so was unauthorized and void. This is practically admitted in the necessity which was supposed to exist, to have the Legislature, by the curative act of December 10, 1900, validate said unlawful pro-

cedure on the part of the city council.   Without this enactment, the contract of the city with these corporations, of date Jun 20, 1896 (Exhibit A to the bill), would fall of its own weight, as being unauthorized and void; and the only question and the one more seriously argued by counsel on both sides, is, whether the said curative act of the Legislature is, for any reason, for the purposes intended, void.

3.   The act of the Legislature of December 10, 1900, referred to herein as the curative act, the title to which we have hereinbefore set out, provides—following the caption—"that all grants, rights, privileges, and franchises, which the city Council of Montgomery has heretofore granted, *or attempted to grant* (italics ours) to any railroad company, and which have been accepted and utilized for railroad purposes, be and the same are hereby legalized, ratified and confirmed."   If the contract between the city and these corporations, of date June 20, 1906, made the grants, rights, privileges, and franchises, or attempted to make such, it is difficult to see why it was not referred to, and covered by, this curative act.   The contract itself, made an exibit to the bill, provides, "that said buildings, underpass and enclosures may be constructed as herein provided for, and that Moulton street and Lee street shall terminate at the points where the same now intersect with the property of the Mobile & Montgomery Railway Company, and that the parts of said streets extending beyond where the same so intersect said property, shall be discontinued and abolished as streets, or any part thereof," etc.   This covered Lee street, in which the depot sought to be removed is located.

It will not, and cannot, be denied, that the Legislature had the power in the beginning, to allow the city council to do all that it attempted to do in its contract with these corporations.

In *Mobile & Montgomery Railway Co. v. A. M. Railway Co.,* 116 Ala. 66, 23 South. 60, it is said: "It seems to be well settled, that the Legislature has the power, generally, to vacate a street in a city, and may delegate this power to the municipal authorities, Eliott on Roads & Streets, 663, and authorities cited."

Mr. Dillon, on the same subject, says: "The Legislature has power to determine when and where streets shall be constructed, their width and mode of improvement, and its action thereon cannot be reviewed by the courts," and further, "And it may be here observed, that whatever the Legislature may authorize to be done is of course lawful, and of such acts, done pursuant to the authority given, it cannot be predicated that they are nuisances; if they were such without, they cease to be nuisances when having the sanction of a valid statute. As respects the public or municipalities, there is no limit upon the power of the Legislature as to the uses to which streets may be devoted."—2 Dillion on Munic. Corp. (3d Ed.) 656, 657.

What the Legislature may lawfully do in the first instance, it may ratify after the thing has been done, if no contract or property rights are involved.—*Lovejoy v. Beeson,* 121 Ala. 605, 25 South. 599.

The act of 1900, as has been before state, purported to validate, and did validate, "all grants, rights, privileges, and franchises, which the city council of Montgomery has heretofore granted (if valid) or attempted to grant (if invalid) to any railroad company, which have been accepted and utilized for railroad purposes." Conceding that the contract ordinance was invalid, it was certainly an attempt to confer the rights and privileges referred to in it. As was well said by counsel for defendants in argument: "After every refinement of reason has been exhausted, it will be impossible, it seems

to us, for any one to read the act approved December 10, 1900, in connection with the contract ordinance approved June 20, 1896, and fail to see that the Legislature intended to ratify, legalize and confirm the right of appellees to occupy and use a portion of Lee street, for depot purposes. The learned judge in the court below took this view, and we think this court can reach no other conclusion.

4. But it is said and urged, that the Legislature cannot legalize a void act, and that the contract ordinance being void for lack of power in the municipality to enter into it, the act of the Legislature of 1900 is without force.

In 8 Cyc. 1024, supported apparently by a great many adjudged cases, it is said: "A statute is valid which ratifies the action of a municipality or its officers (which action is void because informal or in excess of powers) in doing some act, making some contract, contracting some debt, or making some conveyance, provided the Legislature could originally have conferred such power or have dispensed with such formality."—Cooley on Taxation, 229; *Grim v. School District,* 57 Pa. 433, 98 Am. Dec. 237.

In the case of *State of Pennsylvania v. Wheeling Bridge Co.,* 13 How. 518, 14 L. Ed. 249, s. c. 18 How. 421, 15 L. Ed. 435, the bridge constructed over the Ohio river, a public, navigable stream, was by the Supreme Court of the United States held to be both a public and private nuisance, and by decree it was ordered to be abated and removed. Subsequently, an act of Congress was passed, to render lawful the maintenance of the bridge in its then condition. The Legislature of Virginia conferred full authority to erect and maintain the bridge, subject to the power of Congress to regulate the navigation of the river. The same case, after the passage

of the act of Congress legalizing it, again went before the Supreme Court, and the court held, that whereas the construction and maintenance of the bridge, before the passage of the act of Congress, was unlawful and a pub^ lic nuisance (and therefore void), it could not, after that, be abated, but might be maintained.—*Allison v. Corker,* 67 N. J. Law, 600, 52 Atl. 362, 60 L. R. A. 564; *Perry v. N. O. & M. R. Co.,* 55 Ala. 418, 28 Am. Rep. 740; 1 Dillion on Mun. Corp. (3d Ed.) ; 79, and notes.

Our own decisions are apparently to the same effect. —*Lockhart v. Troy,* 48 Ala. 579; *Lovejoy v. Beeson, supra; Hewlett v. Camp,* 115 Ala. 499, 502, 22 South. 137.

5.   But counsel for the state contend, that the curative act is unconstitutional, on the ground that it contains more than one subject.

"The Constitution requires that only one subject should be embraced (in an act), and that should be described in the title. 'Subject' is a very indefinite word. A phrase may state the subject in a very general or indefinite manner, or with minute particularity.   The subject of laws with such titles as the following: "To adopt a penal code," "To adopt the common law of England in part," "To adopt a code of laws," "To ratify the by-laws of a corporation"—would be expressed in a very general way, and very little knowledge of the specific provisions of the laws could be gleamed from the title; yet it would nevertheless be true that the subject was described in the title."—*Ex parte Pollard,* 40 Ala. 98.

A special statute which prohibited the sale of spirituous liquors within a specified distance of two churches in different counties, is not violative of the provisions of the Constitution against each law containing but one subject.   The subject of the act was declared to be single and related only to retailing spirituous, vinous

or malt liquors, and that the clause of the Constitution is not violated by any legislative act having various details pertinent and germane to the general subject.— *Block v. State*, 66 Ala. 495; *Tatum v. State*, 82 Ala. 5, 2 South. 531; *Hare v. Kennerdy*, 83 Ala. 608, 3 South. 683.

The title of an act may be very general—as was said in *Ballentyne v. Wickersham*, 75 Ala. 536—and need not specify every clause in the statute. Sufficient if they are all referable and cognate to the subject expressed. When the subject is expressed in general terms, everything necessary to make a complete enactment in regard to it, or which results as a complement to the thought contain in the general expression, is included in and authorized by it.—*Bell v. State*, 115 Ala. 89, 22 South. 453; *Lockhart v. Troy*, 48 Ala. 584.

"The degree of particularity which must be used in the title rests in legislative discretion, and is not defined by the Constitution. There are many cases where the subject might with great propriety be more specifically stated, yet the generality of the title will not be fatal to the act, if by fair intendment it can be connected with it."—*State v. Town of Union*, 33 N. J. Law, 350; *Sheppard v. Dowling*, 127 Ala. 1, 28 South. 791, 85 Am. St. Rep. 68; *State v. Street*, 117 Ala. 203, 23 South. 807.

Nothing more need be said to rebut the contention of appellant's counsel on this question. It cannot be sustained. Finding no error below, the judgment of the city court must be affirmed.

Affirmed.

SIMPSON, DENSON, ANDERSON, and McCLELLAN, JJ., concur. TYSON, C. J., and DOWDELL, J., not setting.

[State, ex rel. Attorney General v. Louisville & N. R. R. Co. et al.]

## ON REHEARING.

DENSON and McCLELLAN, JJ., while concurring in the conclusion reached in the opinion of Justice HARALSON, do not commit themselves to the breadth of the statements made therein, since the bill—exhibited by the state, on relation of the Attorney General—is directed to the removal of an obstruction from an alleged public highway, and does not necessarily involve the determination of the constitutionality of the act of December 10, 1900, in respect of the taking, injury, or destruction of private property within the protection of section 7, art. 14, of the Constitution of 1875.

ANDERSON, J.—While I concur in the conclusion reached in this case, I do not wish to indorse all that is said in the opinion. The Legislature had the right to authorize the city to vacate the street, but not to authorize it to convey or license the use thereof for the purposes indicated in the ordinance, unless the city owed the fee. If the city merely enjoyed the easement, and did not own the fee, it could only surrender its easement, by vacating said street, under the authority of the Legislature, and this would, of course, be subject to the right of the abutting owners, under section 235 of the Constitution of 1901 (section 7 of Constitution of 1875).—*Albes v. Southern Railway C.,* 153 Ala. 523, 45 South. 234. Therefore, in the absence of ownership of the fee by the city, it could only be authorized to vacate the street, which was all that its said ordinance amounted to and all that the curative act could ratify. I think, however, that what the city did, notwithstanding more was attempted, amounted to a vacation, and that it was germane to the subject as expressed in the title of the act and dealt with in the body, and that said act operated as a ratification of said vacation.