# Hamilton, *et al. v.* Alabama Power Co.

### Bill of Peace.

(Decided June 18, 1915.  Rehearing denied December 16, 1915.
70 South. 737.)

1. **Equity; Bill of Peace.**—A bill of peace to enjoin prosecution of numerous actions of law must aver a complete defense to the actions sought to be enjoined, for one cannot invoke equity jurisdiction merely to have his wrong doing adjudged in one suit instead of many.

2. **Eminent Domain; Private Property; Right of Action.**—Where defendants asserted that the dam erected by complaint under state and national authority created a pool of water, constituted a nuisance which injured their property, and made the location unhealthful, while defendants could not recover unless they were damaged in health or property as a result of the maintenance of the dam (§ 235, Constitution 1901), yet they might, in such case, recover if the damages were the result of complainant's negligence, or

[Hamilton, et al. v. Alabama Power Co.]

if the injuries were the proximate result of the construction of the dam, and such injuries could have been foreseen at the time of its construction.

3. **Equity; Bill of Peace; Nature.**—Where there was no community of interest between the several defendants and each action might involve different grounds of liability and defenses, as where some of the actions might be grounded on negligence, and others on the theory that the injuries were the natural incidents of the construction of the dam, a bill of peace to enjoin prosecution of numerous actions brought by respondent for injuries arising out of the construction of such dam will not lie.

4. **Injunction; Jurisdiction; Numerous Action; Conspiracy.**—Where numerous actions are brought as the result of a conspiracy, equity will enjoin their maintenance.

5. **Same; Want of Equity; Presumption.**—An injunction is not supported by a bill without equity, and, when attacked on appeal from an order granting the injunction, there is no presumption that amendable defects have been cured.

6. **Eminent Domain; Private Property; Governmental Authority.**—Where a dam was constructed under authority of the government, and aided navigation, the owner stands in the shoes of the government, and is not liable for consequential damages, except to property resulting from conditions caused by the construction, and is not guilty of negligence in backing up the water.

APPEAL from Talladega Chancery Court.
Heard before Hon. W. W. WHITESIDE.

Bill by the Alabama Power Company against G. F. Hamilton and others, to enjoin the prosecution of numerous actions sounding in damages. Decree for complainants, and respondents appeal. Reversed and remanded.

STALLINGS, NESMITH, HUNT & JUDGE, and RIDDLE, ELLIS & RIDDLE, for appellant. THOMAS W. MARTIN, PERCY, BENNERS & BURR, O. R. HOOD, and KNOX, ACKER, DIXON & BINGHAM, for appellees.

This case was considered and decided under new rule 46, and the opinion of the court was delivered by Mr. Chief Justice ANDERSON.

(1) This is a bill of peace, by this complainant, to enjoin the prosecution of numerous actions at law against it. The first and paramount step to be taken by a complainant in a bill of this character is the averment of a complete defense to the actions sought to be enjoined. He cannot invoke equity merely to have his wrongdoing adjudged in one suit instead of seven hundred.—*Turner v. City of Mobile,* 135 Ala. 73, 33 South. 132.

(2) The bill avers a series of suits for sickness resulting from conditions created by this complainant, as well as suits for dam-

ages to lands and property of the plaintiffs therein resulting from the erection and maintenance of the complainant's dam across the Coosa river. The bill sets up that the various suits at law, either expressly or by implication, charge that in raising, backing, and maintaining said waters as aforesaid and under the conditions aforesaid, the complainant's action was wrongful; that in a great many of said suits, and in other counts, the plaintiffs also aver and charge that the creating and maintaining of said pool of water in the aforesaid condition was negligent; and, again, in other counts, they charge that orator willfully, wantonly, and intentionally created and maintained said pool of water. The bill also avers that the plaintiffs contended, in effect, that the things charged constituted a continuing nuisance. The bill does not advise us as to what suits proceed upon the sole theory of injuries to the plaintiffs' property, and what ones are for injuries to the person; what ones charge a nuisance in the erection and maintenance of the dam and pool of water, or what ones, if any there be, charge negligence on the part of complainant in the erection and maintenance of the conditions causing injury to the plaintiffs' persons property. The bill negatives generally and in detail any negligence on complainant's part and, in fact, charges that conditions are no worse since the creation of its works than they were before. The complainant also relies upon the fact that its works cannot be regarded as a nuisance, because not only sanctioned by, but the dam was constructed in compliance with, the law, federal and state.

If the conditions complained of by the plaintiffs do not exist, that is, if the pool of water in question has not injured any property rights, or has in no way rendered the community less healthful, etc., then the complainant has a complete and adequate defense to all of said actions. On the other hand, if the injuries complained of do exist, and the complainant has been guilty of negligence which proximately caused same, the complainant would be liable although the law authorized the construction and maintenance of the dam. If, however, the complainant has not been guilty of negligence, it is not liable as for the erection or maintenance of a nuisance, for the reason that the thing done was authorized by law, except perhaps for injuries to the plaintiffs' property—as will be hereinafter discussed.

"In England the rule prevails that an act, if expressly authorized by Parliament, and if done in accordance with the au-

[Hamilton, et al. v. Alabama Power Co.]

thority conferred, cannot be a nuisance, and though injury may result to another he cannot recover therefor. So, it has been declared in an English case that 'when the Legislature has sanctioned and authorized the use of a particular thing and it is used for the purpose for which it was authorized, and every precaution has been observed to prevent injury, the sanction of the Legislature carries with it this consequence that if damage results from the use of such thing independently of negligence, the party using it is not responsible. It is consistent with policy and justice that it should be so.' And an act done under pursuance of a provisional order of the board of trade is protected in England to the same extent as other nuisances done under statutory authority.

"This rule, however, does not prevail in this country, to the same extent. The power of the Legislature is here recognized as omnipotent within constitutional limits, while it may legalize an act which might otherwise be a nuisance, it cannot authorize the taking of private property for public use without just compensation. And the rule may be stated to be that, where one has the sanction of the state for what he does unless he commits a fault in the manner of doing it, he is completely justified, provided the Legislature has the constitutional power to act. And the Legislature may, except so far as it may be limited by constitutional restriction, when deemed necessary for the public good, permit or require that to be done which would, on common-law principles, and without the statute, be deemed a nuisance. And it is a general rule that, where an act is made lawful by legislative sanction, annoyances in connection therewith must be borne by the individual, subject to this qualification, that the act must be done without negligence or unnecessary disturbance, by the one doing it, of the rights of others. So, it has been declared that, 'when the Legislature directs or allows that to be done which would otherwise be a nuisance, it will be valid, upon the ground that the Legislature is ordinarily the proper judge of what the public good requires, unless carried to such an extent that it can fairly be said to be an unwholesome and unreasonable law.' And where legislative authority is granted for the construction of a work of public utility, upon making compensation, the one constructing it is liable only for such injury as results from the want of due skill and care in exercising

the power conferred. So, this principle has been applied where, under such circumstances, one interferes with the current of a running stream."—Joyce, Law of Nuisances, §§ 67, 68, 69.

The foregoing is in line with the decisions of this court.—
Southern Ry. Co. v. Ables, 153 Ala. 523, 45 South. 234; Ables v. Southern R. Co., 164 Ala. 362, 51 South. 327; Hall v. A., B. & A. R. R. Co., 158 Ala. 271, 48 South. 365; Duy v. Ala. Wes. R. R., 175 Ala. 162, 57 South. 724, Ann. Cas. 1914C, 1119.

While, as above set forth a legislative sanction of the thing done will prevent it from being a public nuisance and will render it immune from prosecution as such, or from liability to damages resulting therefrom, except for negligence, it cannot escape liability for injuries done to another's property, resulting from the construction or enlargement of its works, etc.

Section 235 of the Constitution says: "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury or destruction. The Legislature is hereby prohibited from denying the right of appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers or otherwise, but such appeal shall not deprive those who have obtained the judgment of condemnation from a right of entry, provided the amount of damages assessed shall have been paid into court in money, and a bond shall have been given in not less than double the amount of the damages assessed, with good and sufficient sureties, to pay such damages as the property owner may sustain; and the amount of damages in all cases of appeals shall on demand of either party, be determined by a jury according to law."

In the case of Dallas County v. Dillard, 156 Ala. 354, 47 South. 135, 18 L. R. A. (N. S.) 884, this court held, following the case of Chester County v. Brower, 117 Pa. 647, 12 Atl. 577, 2 Am. St. Rep. 713, that the foregoing section authorized the recovery for consequential damages, in an action on the case, for injuries done another's property by virtue of the construction or enlargement of the ways and works, notwithstanding there was no actual taking of the property and that said section was primarily

[*Hamilton, et al. v. Alabama Power Co.*]

intended to prevent an exemption from consequential damages when private property was injured without an actual taking. Of course, the condemnation proceeding may have included all damages done to the owner's remaining land, or that would arise from the construction of the works in question; but this would not relieve the complainant from being amenable for injuries as for a diminution in the value of the lands owned by persons who were not parties to the condemnation proceedings.

The result is that: (1) If none of the plaintiffs in the various suits have been damaged in person or property as a proximate result of the creation and maintenance of the conditions complained of, that is, if the complainant's works have made the health and comfort of the plaintiffs no worse than they were before, and have caused no diminution in the value of their lands by making them less comfortable and healthful, none of the plaintiffs have a right to recover. (2) If there has been a change in the conditions, to the damage of the plaintiffs, or any of them, resulting from the negligence of this complainant, then they are entitled to recover such damages as they may have sustained as the proximate result of said negligence. (3) If there has been no negligence as charged, but injury has resulted to them as the mere result of, or incident to, the construction of the dam and the creation of the pool, and the said dam was constructed by authority of law and in compliance therewith, the complainant is not liable for consequential damages, except to those whose property may have depreciated in value as a proximate result of conditions created by the complainant in the construction or enlargement of its works or improvements.

The street-closing cases are not in conflict with the holding in the present cause, as to the right of a property owner to recover here for consequential damages to his property under section 235, as those cases did not involve a construction or enlargement of works and ways, and the question there considered was whether or not the closing of a street was the taking of property, and whether or not the doing so under legal authority would constitute a nuisance.

The case of *Adler v. Pruitt*, 169 Ala. 213, 53 South. 315, 32 L. R. A. (N. S.) 889, does not hold that a thing authorized by the Legislature and in compliance with the law is an actionable nuisance, as the opinion proceeds upon the idea that while the

law authorized the sewerage it meant a system that would be adequate to render the plant innoxious to the plaintiff by virtue of a proper purification plant; that there was proof that the plant was not so adequately constructed as to meet with the legislative contemplation. Nor does the case of *Birmingham v. Land,* 137 Ala. 538, 34 South. 613, hold that a person can recover damages upon the sole idea that a thing authorized by law was or could be a nuisance. The court there merely held that the right to maintain a public nuisance could not be acquired by prescription, and the plaintiff was permitted to recover upon the idea that the city had not complied with the law authorizing it to construct the sewer so as to empty into Valley creek, as the statute required the condemnation of the lands taken or injured and there was no condemnation of the plaintiff's land.

(3) While there may have been originally some distinction between what is termed "a bill of peace," and one "for the prevention of a multiplicity of suits," the terms as used in modern times are, for all practical purposes, synonymous. A bill of peace originally embraced perhaps more than the mere prevention of a multiplicity of suits, yet a bill to prevent a multiplicity of suits is but a bill to enjoin the further prosecution of a great number of actions at law, by different plaintiffs, against this complainant, who is defendant in the law court.

"It is to be observed that, in order to justify relief by injunction for the prevention of a multiplicity of suits, there must be some common subject-matter in controversy or some common right or interest therein, and that, without this, a mere community of interest in the questions of law and fact to be determined constitutes no basis for equitable relief. Thus, where numerous actions at law have been brought by separate plaintiffs against the same defendant to recover damages resulting from a fire started by sparks from complainant's locomotive, the mere fact that the questions of law and of fact are the same in all the actions, and that the various parties have a common interest in those questions, will not authorize an injunction against the prosecution of the actions and the determination of the issues in equity."—1 High, Inj. (4th Ed.) § 65a; *Roanoke Co. v. Saunders,* 173 Ala. 347, 56 South. 198, 35 L. R. A. (N. S.) 491.

All the authorities agree that where numerous actions are brought, by different plaintiffs, against one defendant, the ques-

tions of law and fact must be the same, and the various parties must have a common interest therein; but there has been a difference of opinion between many able law-writers and judges, as to whether or not there must be a community of interest between all the plaintiffs in the subject-matter. This court, like some of the others, has wobbled some on this subject. Mr. Pomeroy took the position that a community of interest in the subject-matter was not essential in the instances covered by the third and fourth classes as treated in his great work; but he was taken to task by Judge Campbell in the famous *Tribette Case,* 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, and by Chief Justice McClellan, in an able and well-considered opinion in the *Turner Case, supra.* The rule laid down by Mr. Pomeroy was followed in *Southern Steel Co. v. Hopkins,* 157 Ala. 175, 71 South. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20, 166 Ann. Cas. 690; but this case was expressly overruled upon the second appeal, wherein this court, in an able and exhaustive opinion by Justice MAYFIELD, recognized and followed the law as laid down in the *Tribette* and *Turner Cases, supra.*— *Southern Steel Co. v. Hopkins,* 174 Ala. 465, 57 South. 11, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692. The question again arose in the case of *Roanoke Guano Co. v. Saunders,* 173 Ala. 347, 56 South. 198, 35 L. R. A. (N. S.) 491, wherein this court laid down the rule that there must be not only a community of interest in the questions of law and fact, but a community of interest in the subject-matter of the suits. What is meant by a community of interests is best illustrated by quotations on page 478 in the *Hopkins Case* as last reported in 174 Ala., and which we think means that each person must have an interest in the suit of the others, apart from a common interest in the law and facts. This being the case, and with section 5358 of the Code, providing for the consolidation of certain actions, the occasions will be rare, in the absence of a special equity, when courts of equity can enjoin the prosecution of suits at law; but, as was said in the *Turner Case, supra,* and quoted in the *Roanoke Case:* "This court has evinced an inclination toward confining this jurisdiction to a narrow field, in order to conserve and preserve the right of trial by jury."

We think that the case of *Roanoke Co., supra,* is decisive against the equity of the present bill, as the actions were based

upon a general, continuous wrong of the Guano Company affecting the entire community alike, but perhaps in different degree. Of course, that was a private business concern, and this is a public service corporation, acting under direct legislative authority; but this distinction affects only the extent of the liability for damages, and not the interest that the various litigants have in the subject-matter. Indeed, the learned chancellor, in his decree, realized that the *Roanoke Case* was an authority against the equity of the bill unless it contained a special equity, and which will be hereafter discussed. The equity of this bill is fully sustained by the first *Hopkins Case*, but which was overruled, and also by the case of *Railroad v. Garrison*, 81 Miss. 257, 32 South. 996, 95 Am. St. Rep. 469. In this last case an attempt was made to differentiate it from the *Tribette Case;* but there was no community of interest in the subject-matter, and the court relied upon the statement of Mr. Pomeroy, which was re-repudiated by this court in the *Turner Case.*

There may be other cases which support this bill, but they are not in harmony with what is now the settled rule in this state. The early English cases which indicate that a community of interest in the subject-matter is not essential to the equity of this bill cannot influence a decision of this case contrary to the weight of modern authority and the settled rule of our own court. Indeed, Mr. Pomeroy largely relies upon "The Case of the Fisheries" and "The Case of the Duties," especially upon the opinion of Lord Hardwick, in the former, as supporting the rule laid down by him, but which was repudiated in the *Turner Case, supra.*

This question has not been free from difficulty, and this writer, in concurring in the first *Hopkins Case,* thought that the Pomeroy rule then followed was salutary and was supported by the early case of *Morgan v. Morgan*, 3 Stew. 383, 21 Am. Dec. 638, that this court was committed to the rule, and that the *Turner Case* could be distinguished. The writer was also rather reluctant in agreeing to the last *Hopkins Case,* and did so only after concluding that it conflicted in principle with the *Turner Case, supra,* and that the early case of *Morgan v. Morgan* contained an independent equity. The opinion in this last case may not disclose an independent equity, but the statement of the case does disclose an equity independent of enjoining the actions at law.

[Hamilton, et al. v. Alabama Power Co.]

While we feel that this question has been settled by the last *Hopkins Case* and the *Roanoke Case,* yet, for the purpose of settling all doubt in the future, we repeat that when a bill is filed in equity to enjoin a number of actions at law, brought by many persons against one defendant, whether it be called "a bill of peace" or "a bill to prevent a multiplicity of suits," the plaintiffs in the actions at law must not only have a common interest in the law and the facts, but must also have a community of interest in the subject-matter, in the absence of course, of an independent equity.

We think, however, that the present bill is deficient, not only in not showing a community interest in the subject-matter, but for the further reason that it fails to show a common or identical interest in the law and the facts. If the bill grounded the complainant's defense solely upon the denial of injury or damage, there would be an identity of law and of facts; but the bill injects other elements into complainant's case—several elements of defense to the cases at law, or some of them. For instance, in said suits, some could probably recover for injury to property, when they could not for injury to the health or to the person. They could perhaps all recover for negligence; while some might recover in case there was no negligence, and others could not recover except upon proof of injuries proximately resulting from the defendant's negligence. In other words, instead of all of the cases being governed by the same law and facts, many of the suits and many of the counts in the complaint may be controlled by different law and different facts; the result being that. some of the plaintiffs could recover when others could not.

(4) A court of equity may have the power to enjoin the action of an unlawful combination or conspiracy, but this feature of the bill does not present a case for equitable interference. In the first place, no conspiracy is charged, or established by the facts set out, against all of these respondents; but, if such were the case, it would not amount to a charge of unlawful combination or conspiracy. The bill charges certain conduct on the part of some of them, but falls far short of charging, or of setting out facts which would establish, an unlawful combination, the wrongs of which could not be redressed at law, and which would call for an injunction by a court of equity. Indeed. this feature of the bill is not seriously insisted upon as presenting an independent equity.

[Hamilton, et al. v. Alabama Power Co.]

Undoubtedly, a court of equity has the power to protect the franchise of a corporation from injury or destruction from unlawful acts or conduct, but not to prevent a number of persons from attempting to redress in a lawful way alleged wrongs by the corporation against their persons and property.

(5) A bill without equity will not support an injunction of any character, under any circumstances, and the bill, when attacked upon an appeal from the order granting same, as distinguished from the refusal of a motion to dissolve the injunction, cannot be aided by the presumption that amendable defects have been cured.—*McHan v. McMurry,* 173 Ala. 182, 55 South. 793.

(6) In the discussion of the general principles involved in this case and in reaching the conclusion that the bill does not contain equity, we did not intend to hold or intimate that this complainant would be liable in an action at law as for consequential damages, other than to property, which resulted from the erection or extension of its works in compliance with the law. In other words, the bill negatives a nuisance, and also sets up that the dam was constructed under the authority of Congress and in strict compliance with the federal law, and for the benefit of navigation, and that to all intents and purposes this complainant was a governmental agency in the construction and maintenance of the dam. This being true, there could be no liability upon the part of the government as for consequential damages, except to property, resulting from conditions caused by the construction and maintenance of the dam, and this complainant would be equally protected, and if it constructed the dam in compliance with the law it could not be guilty of negligence in causing the backing of the water. If it did what the law authorized, and proceeded under the rules prescribed, it could not be guilty of negligence so as to render it liable for resulting consequential damages.—*Bedford v. United States,* 192 U. S. 217, 24 Sup. Ct. 238, 48 L. Ed. 414; *United States v. Lynah,* 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539. On the other hand, the legal authority for the construction and maintenance of the dam, by the government or by this complainant, does not afford an exemption from damages for taking property as protected under the federal Constitution, or for taking property, or consequential damages thereto, under the state Constitution.—*Chicago v. Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638.

[Hamilton, et al. v. Alabama Power Co.]

The chancellor erred in granting the preliminary injunction; and a decree is here rendered, reversing the order granting same, and dissolving said injunction.

ANDERSON, C. J., and MCCLELLAN, SAYRE, and GARDNER, JJ., concur.

### ON REHEARING.

ANDERSON, C. J.—While we hold that the construction of the works, though done under the authority of the government and in compliance with its requirements, does not relieve the complainants from damages to property resulting from said erection, construction, or enlargement of the ways, or works, either actual or consequential, the damage must result from the erection, construction, or enlargement, as distinguished from injuries caused by the maintenance or operation of the ways or works. As has been repeatedly stated, by this court, section 235 of our Constitution was borrowed from Pennsylvania, and in placing it in our Constitution of 1875, and readopting it in the Constitution of 1901, we did so in view of the construction that had been given it by the Supreme Court of the state from which it was taken. This section has often been construed by the Pennsylvania court, and the court said: "It is very plain to our view that the constitutional provision was only intended to apply to such injuries as are capable of being ascertained at the time the works are being constructed or enlarged, for the reason, among others, that it requires payment to be made therefor, or security to be given, in advance. This is only possible where the injury is the result of the construction or enlargement, for how can injuries which flow only from the future operation of the road, and which may never happen, be ascertained in advance, and compensation made therefor?"—*Pa. R. Co. v. Merchant,* 119 Pa. 541, 13 Atl. 690, 4 Am. St. Rep. 659; *Railroad Co. v. Lippincott,* 116 Pa. 472, 9 Atl. 871, 2 Am. St. Rep. 618; *Pa. Ry. Co. v. Walsh,* 124 Pa. 544, 17 Atl. 186, 10 Am. St. Rep. 611.

The application is overruled.

ANDERSON, C. J., and MCCLELLAN, SAYRE, and GARDNER, JJ., concur.