# Ogletree *v.* McQuaggs *et al.*

### Bill in Equity to Enjoin the Erection of a Dam.

1. *Nuisances; equity has jurisdiction to restrain.*—The jurisdiction of courts of equity to restrain the commission or continuance of nuisances, public or private, is well settled, and has been frequently recognized in this court; it is founded on the ability of the court to afford more complete relief than courts of law can grant.

2. *Same; when trial of action or issue at law necessary before equity will enjoin.* If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irreparable mischief, without waiting for the result of a trial at law; and will, according to the circumstances, direct an issue, or allow an action at law, and even expedite the proceedings, if necessary, continuing the injunction in the meantime. But, when the thing sought to be restrained is not necessarily obnoxious, but only may prove so according to circumstances, then the court will refuse to interfere until the matter has been tried at law—generally by an action, but sometimes, where an action could not be properly framed, on an issue out of chancery.

[Ogletree v. McQuaggs et al.]

3. *Same; evidence required before equity will declare thing to be without trial of issue.*—Unless the evidence is full, clear, and convincing, the court will not take upon itself to decide, without an issue at law, that a nuisance in fact exists, or that a thing which may or may not become a nuisance will so operate.

4. *Mill-dams; when erection of restrained without action at law.*—A nuisance which operates to destroy health, or to seriously diminish the comfortable enjoyment of a dwelling-house, is productive of irreparable mischief, for which no adequate remedy at law can be given; and the erection of dams, or other obstructions, which materially affect the natural flow of a running stream, and injure the health of persons living in the neighborhood, has been restrained by injunction, without waiting the result of an action, or the trial of an issue at law.

5. *Same; statutory policy as to erection of, followed in courts of equity.*—From a very early period in the history of this State, down to the present time, the erection of mill-dams, or other similar obstructions of a running stream, have been controlled by statutory provisions, which indicate a settled policy to subordinate the right of the proprietor to build such structures to the preservation of the health of the neighborhood; and in the class of cases to which these statutory provisions relate, the jurisdiction of courts of equity should be exercised in furtherance of this policy.

6. *Same; parties to bill to enjoin erection of.*—Where the legal title to lands which have been sold to one who intends erecting a mill and dam upon them remains in the vendor, he having an immediate right of entry thereon, and having made an executory contract of sale of them with full knowledge of the purposes to which the vendee intends to devote them, the vendor is, in such case, a proper, if not a necessary party, to a bill of injunction to restrain the erection of the dam.

APPEAL from the Chancery Court of Pike.

Heard before Hon. H. AUSTILL.

The opinion sufficiently states the facts.

JOHN D. GARDNER, for appellant.—The complainant had a right to maintain a bill in equity for an injunction.—See Wood's Law of Nuisances, page 835, § 783, page 711, § 698, note 2, citing *Mills v. Hall*, 9 Wend. (N. Y.) 315, and page 812, § 769, citing in *note* 1 the case of the *Fishmongers' Co. v. The East India Co.* 1 Dick. 163. "Where the injury is not susceptible of adequate compensation in damages, or where the injury is a constantly recurring grievance, a court of equity will interfere by injunction."—Lord Eldon, in *Attorney-General v. Nichol*, 16 Ves. 342–3, and in *Crowder v. Trickler*, 19 Ves. 617. The jurisdiction of courts of equity to interpose by injunction, is well established by the Supreme Court of Alabama.—*St. James' Church v. Arrington*, 36 Ala. 546, and the authorities therein cited; *Rosser v. Randolph*, 7 Por. 238. Respondents should not be allowed to do by themselves what they would not be allowed to do if they sought the aid of the statute; that is, " if the aggregate healthfulness of the neighborhood would *probably* be put in peril, or if the inhabitants of the neighborhood, considered as a unit, would probably be rendered *less* healthy by the erection of the proposed dam, the order should not be granted."—*Hollis v. Charman*, in manuscript. The failure of respondent, McQuaggs, to proceed under the statute, conduces strongly to show

that the undertaking would fall within the inhibition of the statute, and that, at least, in the estimation of the people of the vicinage, "the health of the neighborhood will probably be endangered" thereby. The testimony, at least, shows a probability that irreparable mischief would be done by the erection of the proposed dam. In such a case, a Court of Chancery will not make subtle distinctions and refuse relief merely because there is a bare possibility that the evil may be avoided.—*St. James' Church v. Arrington, supra.*

PARKS & HUBBARD, *contra.*—No decree can be rendered against defendant, Croskey, as he denies, under oath, any interest, and the proof fails to show he is undertaking to erect the dam. There is no proof to show he is a party in any manner to the erection of the mill. This case is to be distinguished from a case arising under an application to the Probate Court to erect a dam ; in this, that when a grist-mill is erected under such proceedings, it becomes a legal structure to the same extent as if established by legislative act, and cannot afterwards be abated, even though it should become a nuisance.—*Perry v. New Orleans, Mobile & Chattanooga R. R.* 55 Ala. 424 ; last paragraph 421, first and second paragraphs of opinion ; High on Inj. page 292, § 523 ; Dillon on Munic. Corp. § 519, cited in *Perry v. N. O., M. & C. R. R. supra.* Hence, the law wisely declares that, if a mill-dam proposed to be erected under the statute will *probably endanger* the health of the neighborhood, it should not be erected. Code of 1876, § 2564 [3], and that without any reference to any public necessity there may be for it. But in this case, as the mill and dam, if erected, may afterwards be abated if they should become a nuisance, there is no necessity for the caution which the statute impliedly enjoins. The provisions of the Code above alluded to, do not affect the right of a man to build a dam "on his own hook, and, in this instance, on his own land." They provide a remedy in case such dam becomes a nuisance. Hence, McQuaggs has a right, without resorting to a writ of *ad quod damnum*, to erect the dam, being answerable as provided by the statute.—Code of 1876, § 3577 ; *Rosser v. Randolph,.* 7 Port. 247.

Section 3577, *supra*, in declaring a remedy at law, by prosecution, excludes the jurisdiction of chancery.—High on Inj. 276, § 495.

The frame of the bill in this case, the averments, and the offered evidence, show that complainant undertakes to restrain a public nuisance. If so, he must show, in order to maintain his suit, that by the erection of the proposed dam he will suffer some injury distinct and separate from that suffered by

[Ogletree v. McQuaggs et al.]

the public.—*Perry v. N. O. & M. & C. R. R., supra;* 2 Story Eq. Jur. § 924 (a); *Mayor of Columbus v. Snodgrass,* 10 Ala. 48, and last par. of opinion on page 49; High on Inj. §§ 521, 522, and note 1. Ogletree shows no such special injury.

But if the proposed dam is not made out a public nuisance, can complainant obtain relief on the idea that it is a private nuisance? The rule in such a case is as rigid as in the case of a public nuisance. It must be satisfactorily established to be a strong case of pressing necessity, to entitle a party to an injunction. A clear and plain case must be made out.—*Rosser v. Randolph, supra; St. James' Church v. Arrington,* 36 Ala. 548; *Ray v. Lyon,* 10 Ala. 64; High on Inj. §§ 486, 488, 489. "It will not suffice to show a probable or contingent injury, but it must be shown to be inevitable and undoubted."—High on Inj. § 495.

The right to restrain a nuisance can be lost by *laches*, and permitting its continuance for a length of time that would give right by adverse enjoyment.—High on Inj. §§ 494, 507, 508; *Rice v. Moore,* 38 Ala. 596. It appears from the answer and proof, that the structure proposed to be re-established stood for over ten years.

The evidence does not show such a strong case of pressing necessity as should authorize a Court of Chancery to interfere by injunction.

BRICKELL, C. J.—The bill is filed by the appellant to restrain the appellees from erecting, for the use of a grist mill they are constructing, a dam across a stream not navigable, running through their lands near to the city of Troy. The material averments are, that the stream upon which the dam is to be erected is formed by the confluence of two streams running through the city, draining a large part of it, and into which much of its sewage is discharged; that the mill is being constructed on the site of a former mill, and the dam will collect the waters on the site of the former pond, which has been disused for several years, and suffered to grow over with briars and other shrubs. The stream will afford but a scant supply of water during the summer and fall, and in operating the mill in those seasons, much of the ground covered by the pond will be alternately flooded and drained. The dam will cause much of the deposits from the drainage and sewage from the city to collect in the pond; there will be, in consequence of the undergrowth covering the pond, decay and decomposition of vegetable matter. These causes will generate malaria, producing disease in a large part of the city, and will be pernicious to the health of appellant and his family residing in the city near the confluence of the two streams.

[Ogletree v. McQuaggs et al.]

While the former mill was in existence, sickness did result from it, and the appellant lost three children, whose sickness and death, as he was advised by his physician, was from disease generated by the pond. The appellees have not made application to the judge of probate for an order to erect the dam, though it was known to them its erection would be resisted.

The appellee Croskey answers, denying that he is engaged or has any interest in the erection of the dam, or in the construction of the mill; states that he sold the lands to Mc-Quaggs, who desired to rebuild the mill, and the sale being on credit, he retained the title as security for the purchase-money. McQuaggs answers, and denies the more material allegations of the bill; admits he is engaged in the erection of the dam and construction of the mill, without having made application for an order in the mode prescribed by the statute; admits appellant's residence with his family as stated in the bill, but denies that his health or that of his family can be affected by the dam. Much testimony was taken, to which reference is unnecessary, in the view of the case we are constrained to take. On the hearing, the Chancellor was of opinion the evidence did not show that the appellant would suffer any other injury from the dam, than such as his neighbors would suffer, and therefore decreed a dissolution of the temporary injunction and a dismissal of the bill.

The jurisdiction of the courts of equity to restrain the commission or continuance of nuisances, public or private, is settled, and has been of frequent recognition in this court. 1 Brick. Dig. 672, §§ 467–476. The ground of jurisdiction is the ability of the court to afford more complete remedies than courts of law can afford, bound and tied down to remedies they are not capable of moulding and adapting to the necessities of particular cases, thereby preventing irreparable injury, suppressing a multiplicity of suits, and avoiding vexatious and oppressive litigation. As the court is not in the exercise of its ordinary jurisdiction, but is interfering to supply the deficiencies of legal remedies, it interferes only when there is immediate, pressing necessity for the prevention of an injury, incapable of adequate compensation in damages at law, "or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, which can not be otherwise prevented but by an injunction."—2 Story's Eq. § 925. The rules laid down by Lord Brougham in the leading case of *Earl of Ripon v. Hobart*, 3 Myl. & Keene, 169, respecting the exercise of the jurisdiction, have been here adopted. He said: "If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irrepara-

[Ogletree v. McQuaggs et al.]

ble mischief without waiting for the result of a trial; and will, according to the circumstances, direct an issue, or allow an action, and if need be, expedite the proceedings, the injunction being in the meantime continued. But, when the thing sought to be restrained is not unavoidably and in itself obnoxious, but only something which may,.according to circumstances, prove so, then the court will refuse to interfere until the matter has been tried at law, generally by an action, though in particular cases an issue may be directed for the satisfaction of the court, where an action could not be framed so as to meet the question." It may also be laid down as a general proposition, that the court will not, unless the evidence is full, clear and convincing, take upon itself to decide that a thing which may or may not become a nuisance, will so operate, or that a nuisance in fact exists, without the trial of an issue at law.—*Cummings v. Barrett*, 10 Cush. 186; *Burnham v. Kenton*, 44 N. H. 78; *Eastman v. Company*, 47 N. H. 71; *Mason v. Sanborn*, 45 N. 171; *Jushbald v. Barrington*, 4 L. R. Ch. App. 388.

When the nuisance operates to destroy health, or to diminish seriously the comfortable enjoyment of a dwelling house, it is in its nature and consequences productive of irreparable mischief, for which the law can furnish no adequate remedy. High on Inj. § 491; 2 Story on Eq. §§ 926-7; *Holman v. Boiling Springs*, 1 McCarter, N. J. Eq. 343. The erection of dams, or other obstructions, in such manner as to affect materially the natural flow of the water to the manifest injury of the lands of other riparian proprietors, or to injure materially the health of those residing in the vicinity, the court has enjoined without awaiting the trial of an issue at law, or until there was a trial of the issue.—*Sprague v. Rhodes*, 4 R. I. 301; *Whitfield v. Rogers*, 26 Miss. 84; *White v. Forbes*, Walker (Mich.) 112. Every man has a right to the undisturbed enjoyment of his property, especially to dwell in his homestead freed from the peril of disease and death, caused by artificial constructions erected by his neighbor on his own lands, whatever may be the purpose of such constructions. The right is imbedded in the common law maxim of such frequent use—*sic utere tuo ut alienum non laedas*. For the preservation of health, and the protection of the undisturbed enjoyment of property, courts of equity in recent times have interfered upon the just and conservative principle, that it was better to prevent, than to undertake to cure or compensate for the evil, after it was wrought.—*Whitfield v. Rogers*, supra.

From the earliest period in our legislative history, it has been a fixed policy to provide a judicial proceeding by which

it could be speedily ascertained before the erection of a dam on a water-course for the uses of a mill, gin, or other machinery, not only how far it would affect rights of property, but what would be its influence on the health of the neighborhood. A proceeding before the county court, on the application of the land owner, proposing to erect the dam, was authorized first by an act of the territorial legislature passed in 1811. The act was revised by an act adopted in 1812, and continued of force, with some changes, it is not necessary now to refer to, until the Code of 1852 became of force. It was declared unlawful for any person to erect a mill, so as to overflow any other mill, or create a nuisance in the neighborhood. When, as in this case, the person proposing to erect the mill and dam, owned the land on both sides the stream, on application, a writ of *ad quod damnum* was issued, commanding the sheriff to summon and empannel seven land holders or freeholders to meet upon the lands, and among other inquiries they were to make, was, *whether, in their opinion, the health of the neighbors will be materially annoyed by the stagnation of the waters*. Their inquest was returned to the county court, and if, upon that, or other evidence, it appeared to the court, *the health of the neighbors will be materially annoyed*, leave to build the mill and dam could not be given. Clay's Dig. 376-8, §§ 1, 16. The present statute authorizes like proceedings before the judge of probate, and of the inquiries the jury are required to make, is, *whether the health of the neighborhood* will probably be endangered. If, from the inquest, or other evidence, it appears such is the fact, the judge must not grant the application. Whoever erects a dam without obtaining an order therefor, is liable to double damages for any injury resulting therefrom.—Code of 1876, §§ 3555-79.

These statutes indicate very clearly, a settled policy to subordinate the right of the land owner to erect on his own lands, dams obstructing water-courses, to the preservation of the health of the neighborhood. Though they may be intended for lawful and useful purposes, authority for their erection can not be obtained if there is probability of danger to the health of the vicinage. The stagnation of water is of greater peril to health, in this latitude and climate, than in higher latitudes, and it is in view of this fact, these statutes have been enacted. In the exercise of its jurisdiction to prevent the erection of such obstructions, a court of equity would but follow the law, if a case is presented in which the evidence is not so clear and determinate that it can act safely, an issue of fact should be awarded to be tried by a jury. There should be much reluctance in subjecting individuals or com-

[Ogletree v. McQuaggs et al.]

munities to the dangers of disease.   For injuries to property
compensation may be made, after they have been suffered,
but for injuries to health, no adequate compensation can be
made ; they are irreparable.

Without expressing any opinion as to the right of evidence
in this case, there is enough in it to require that an issue to
be tried by a jury should be directed.   A continuance of the
injunction will merely preserve the existing state of things,
and can not work an injury to the appellees, for which they
may not obtain adequate compensation in damages, by action
on the injunction bond, if finally it shall be ascertained that
the dam will not endanger the health of the neighborhood,
or if it will, that it will not be of special injury to the appel-
lant.   We intend no relaxation of the general rule, that the
court should not interfere with erections by a proprietor on
his own lands, unless they are *per se* nuisances, working irre-
parable mischief ; or if the erection is not of itself a nuisance,
but is, *prima facie*, a legitimate exercise of his dominion over
his own property, that it must be shown clearly the erection,
if completed, will prove a nuisance, inflicting irreparable in-
jury—injury irreparable of adequate compensation.   Nor, do
we intend a relaxation of the rule, that the court will not in-
terfere, when the injury of which complaint is made and
sought to be restrained, is doubtful or contingent, when the
thing contemplated may or not prove noxious, according to
the manner of its completion, and the mode in which it may
be used.   The legislation to which we have referred, requires
that in the class of cases to which it relates, the jurisdiction
of the court should be adapted to, and exercised, in view of
its policy.   In determining whether a temporary injunction
to restrain a *threatened* nuisance should be continued or dis-
solved until the fact of nuisance is satisfactorily ascertained,
regard must be had to all the circumstances of the particular
case, the nature and character of the injury apprehended,
and then the test should be applied—ought the party com-
plaining to be protected, or required to submit until the fact
of nuisance is ascertained and experience shows whether he
will be subjected to the injury apprehended.

If the deleterious consequences will result from the erec-
tion of the dam, which are stated in the bill, it will certainly
be a public nuisance.   But if it will also be as to the appel-
lant a private nuisance—if it is of *special* injury to him—if it
will materially affect the comfortable enjoyment of his home,
and endanger the health of himself and family—that it will
also affect others of his neighbors, does not lessen the injury
he will sustain, nor merge it in that of which the public may
complain.—2 Story Eq. § 924 ; *Millions v. Sharp*, 37 N. Y.

611; *Mayor v. Rogers,* 10 Ala. 57; *Mohawk Bridge Co. v. N. & S. R. R. Co.* 6 Paige, 554; *Crowder v. Tinkler,* 19 Vesey, 616.

The legal title to the lands residing in Croskey, he having an immediate right of entry thereon, and having made an executory contract of sale of them with full knowledge of the purposes to which McQuaggs intended devoting them, he was a proper, if not a necessary party to the bill.—Wood on Nuisances, § 822. Whether he shall be taxed with costs, will rest in the discretion of the Chancellor, and will materially depend upon his participation in the litigation.

The decree of the Chancellor is reversed, the temporary injunction reinstated, and the cause is remanded, that an issue of fact may be formed and tried by a jury to aid the Chancellor in ascertaining—1. Whether the erection of the dam will probably endanger the health of the neighborhood. 2. Whether the complainant will be thereby materially injured in the comfortable enjoyment of his dwelling, or the health of himself and family endangered.