# State *ex rel.* The Attorney General *v.* The Alabama Power Company.

*Action to Enjoin Construction and Maintaining of Dam.*

(Decided April 25, 1912. 58 South. 462.)

1. *Navigable Waters; Bed and Waters of Stream; Title; Disposition.*—Legal title to the beds and waters of navigable streams in the state rests in the state in trust for public purposes subordinate to the supreme right of navigation lodged in the general government as trustees for all the people of all the states; and subject to such limitation in favor of the United States, the state may grant the fee in such trust property, provided the grant is not inconsistent with public interests to which the waterways were permanently and originally dedicated.

2. *Same; Dams; Construction; Statutes.*—The provisions of sections 6148 and 6149, Code 1907, have no application to corporations other than those organized for improving navigation on navigable rivers, and in connection therewith of developing water power by the dam and lock system.

3. *Same; Corporations; ·Powers; Statutes Applicable.*—The provisions of ·section 3627, et seq., Code 1907, are not limited to dams constructed in non-navigable streams but apply as well to dams constructed in a navigable stream; hence, a dam constructed in a navigable stream by a corporation otherwise organized to construct and operate the same for power purposes was neither a trespass nor a public nuisance.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by the State on the relation of the Attorney General to enjoin the Alabama Power Company from constructing and maintaining dams across the Coosa

river at the points described in the bill. From a judgment denying the petition relator appeals. Affirmed.

R. C. BRICKELL, Attorney General, for appellant. Without a strict compliance with section 6148, et seq., Code 1907, there is no authority for building and maintaining a dam upon any navigable stream in this state. The sections contained in article 1, chapter 79, Code 1907, gives no authority except in case of non-navigable streams, and this chapter must be construed in connection with chapter 148, article 2, of the Code.

OLIVER R. HOOD, for appellee. The Legislature has the power to grant the right to dam a navigable river in Alabama, whether navigable or non-navigable, subject, of course, to the authority of the United States in the case of navigable streams.—*City of Mobile v. Eslava*, 9 Port. 537; *City of Mobile v. Eslava*, 41 U. S. 234; *Duval v. McClosky*, 1 Ala. 708; *Pollard v. Files*, 3 Ala. 47; *Pollard v. Thorp*, 3 Ala. 291; *Kennedy v. Beebe*, 8 Ala. 909; *Pollard v. Greit*, 8 Ala. 930; *Pollard v. Hagan*, 3 How. 212; *Megee v. Doe*, 22 Ala. 699; *Boulo v. N. O. N. R. R. Co.*, 55 Ala. 480; *Williams v. Glover*, 66 Ala. 189; *Mobile T. Co. v. Mobile*, 128 Ala. 335; *Mobile T. Co. v. Mobile*, 187 U. S. 479; *City of Demopolis v. Webb*, 87 Ala. 659; *Webb v. City of Demopolis*, 95 Ala. 116; *Simonson v. Cain*, 138 Ala. 221; *Cain v. Simonson*, 39 South. 571; *State v. Harrub*, 95 Ala. 176; 1 Farnham Waters and Water Rights, secs. 48-54. The State has granted to power corporations the right to construct dams across navigable streams for power purposes. The first is found under section 3888, et seq., Code 1907. The second, under sec. 3627-3637, Code 1907; the third is found under secs. 6148-6150, Code 1907, and the fourth is found in General Acts 1911, p. 405, and in con-

struing them, they will be construed as in pari materia.
—96 U. S. 160; 132 U. S. 235. The courts will also look
to the public history of the time.—3 How. 24. The
court has held that the word "manufacture" embraces
the production or generation of electrical current.—
*Beggs v. Edison E. Co.,* 96 Ala. 295. An examination of
these statutes will demonstrate that this right is given
to Power Company on navigable as well as non-naviga-
ble streams, and that the grant of power by the state,
and the grant by the government to construct these par-
ticular dams, takes away from them the character of a
trespasse, or of a public nuisance.

McCLELLAN, J.—The learned judge of the city
court thus concisely states the case now presented for
review on appeal: "In this cause, the state seeks to en-
join the Alabama Power Company, a corporation, from
constructing and maintaining a dam across the Coosa
river at a point in Chilton county, Ala., described in
the bill, insisting that the Coosa river is a navigable
stream; that the state is the owner of and the title is
in it to the bed and waters of said river; that the said
Alabama Power Company has no right or authority
from the complainant to construct said dam and main-
tain the same; that in the construction of said dam the
said Alabama Power Company is committing a recur-
ring and continuous trespass on the property and rights
of complainant, and said dam will and does constitute
a public nuisance. The defendant's answer sets forth
how the proposed dam is to be built; that they are the
owners of and have acquired by purchase, and not by
condemnation, a dam site, or power site, comprising
more than one acre of ground upon each and opposite
sides of said river, it being acquired by purchase and
not by condemnation, the lands described in complain-

ant's bill; that said lands constitute the site for the dam that respondent is now constructing; that it is constructing said dam for the purpose of manufacturing and selling to the public electric lights produced at its plant, and will, when said dam and plant are completed, manufacture, sell, and supply power, heat, light, or electricity produced by the waters impounded by said dam as a motive force, to the public, selling such power, heat, light, or electricity to any person or persons, municipal, or other corporations, in the order in which the requests or demands are made for such light, heat, power, or electricity; that it has procured from the United States the right and authority to construct said dam site, which is evidenced by an act of Congress, approved March 4, 1907 [Act March 4, 1907, c. 2912, 34 Stat. 1288], designated 'Public, No. 247,' and which act of Congress is especially set forth in their answer; that the place selected for the location of the lock and dam, and it is constructing said dam at the place selected for the location of the lock and dam No. 12, on said river, is located in the survey made by the engineers of the United States of the Coosa and Alabama rivers in Georgia and Alabama, in compliance with the River and Harbor Act, approved June 13, 1902 [Act June 13, 1902, c. 1079, 32 Stat. 353], the place named in said act of Congress for the construction of said dam, which place is on the two tracts of land lying upon the opposite sides of said river, as hereinbefore stated; that plans for the construction of said dam and appurtenant works have been submitted to and approved by the Chief of the Engineers and the Secretary of War within the time as required by said act of Congress granting to respondent the right to construct said dam; that they have commenced work in the construction of said dam as required by said act of Congress within the time named therein;

that said plans were approved and have not been deviated from, but has complied with all the acts of said act of Congress which were exacted of it thereby up until the filing of their answer; that the other act of Congress referred to, granting the right to construct said dam at said place, is an act entitled 'An act to regulate the construction of dams across navigable rivers,' and is a public act which is designated as 'Public, No. 262.' [Act June 21, 1906, c. 3508, 34 Stat. 386 (U. S. Comp. St. Supp. 1911, p. 1558)]. Respondent denies that, when said dam is completed at the various stages of completion, it will constitute a public nuisance; that said river at the point where said dam is being constructed is not now actually navigable and is wholly incapable of being navigated by crafts or boats, even of the smallest type, such as bateaux; that for a distance of 40 miles below and about 75 miles above said dam said river is not now navigable on account of the shallow depth of the water from the stretch of the river main and the many shoals and rapids in the same; that the dam when completed will take the water up stream for a distance of 15 miles above the dam and will render that stretch of the river navigable; that the United States has reserved the right to construct a lock and passageway for their crafts in connection with said dam for the purpose of improving navigation and rendering said stretch of the river navigable, and instead of constituting a nuisance said dam will improve the navigability of the river and devote the bed and waters thereof to the great and vast public use. And respondent denies that it is committing a recurring and continuous trespass on the property and rights of complainant in the location of said dam, and denies that said dam will be and does constitute a public nuisance, which denials are based on the claim of respondent that

it has the right from the state to construct said dam under the conditions, in the manner and for the purposes for which said dam is being constructed, claiming that such right to construct said dam has been conferred by the statutes of the state. In the agreed statement of facts, the parties respectively admit the facts offered in the bill and answer, but legal conclusions from the facts and the pleadings alone being disputed."

The substantial parts of the agreement of the respective solicitors are as follows:

"(1) That all the averments of fact contained in the bill of complaint are true and admitted, but the following averments of legal conclusions are not admitted by respondent as being correct conclusions of law: (a) In the third paragraph of the bill: 'That respondent has not the right or authority from complainant to construct said dam and maintain the same, and that, in the construction of said dam respondent is committing a recurring and continuing trespass on the property and rights of complainant, and said dam will and does constitute a public nuisance.' (b) In the fourth paragraph of the bill: 'That said dam when completed, and at the various stages of completion, will and does constitute a public nuisance.'

"(2) That all the averments of fact contained in the answer are true and admitted, but the following conclusions of law contained in the answer are not admitted to be correct conclusions of law: (a) In the third paragraph of the answer, the conclusion of law that the facts therein set up give to respondent the right to construct said dam across said navigable river."

In Alabama the legal title to the beds and waters of navigable ways is lodged in the state in trust for public purposes; subordinate, however, to the supreme right of navigation which is lodged in the United States as trus-

40—176

tee for all the people of all the states.—*City of Mobile v. Eslava,* 9 Port. 577, 596-604, 33 Am. Dec. 325; 1 Farnham on Waters, § 536; *Mobile Transportation Company v. City of Mobile,* 128 Ala. 335, 349, 30 South. 645, 64 L. R. A. 333, 86 Am. St. Rep. 143, and authorities there cited; *Mobile Transportation Company v. Mobile,* 187 U. S. 479, 23 Sup. Ct. 170, 47 L. Ed. 266. Subject to the stated limitation in favor of the supreme right of navigation reposed in the United States, this state may even grant the fee in the trust properties to which reference has been made; provided the grant is not inconsistent with public interests to which the navigable water ways are·permanently, originally, dedicated.— *Mobile Transportation Co. v. Mobile,* 128 Ala. 335, 349, 30 South. 645, 64 L. R. A. 333, 86 Am. St. Rep. 143; 1 Farnham on Waters, § 44. It is finally settled in and for this state that the line of public (state) ownership of the bed and shores of nontidal navigable water ways is low-water mark.—*Webb v. Demopolis,* 95 Ala. 116, 13 South. 289, 21 L. R. A. 62; *Williams v. Glover,* 66 Ala. 189; *Demopolis v. Webb,* 87 Ala. 670, 6 South. 408.

The single question which the state (appellant) presents on this appeal is whether Code, § 3627 et seq., intends the granting, by the state, of the right, to corporations lawfully chartered to manufacture, supply, and sell to the public power produced by water as a motive force, to dam *navigable* waters?

The state insists that the only statutory authorization, to that end, existing with respect to navigable water, is to be found in Code, §§ 6148, 6149. It may be here remarked that these last-mentioned statutes have no reference to corporations other than those organized for the "purpose of improving navigation upon navigable rivers" in this state in *connection* therewith of the

development of water power by dam and lock system. It is not made to appear that the Alabama Power Company (appellee) was organized for any other purposes than those mentioned in Code, § 3627. It is not within the definition of Code, §§ 6148, 6149.

The burden of the argument for the state is that the rights given by Code, § 3627 et seq., are confined to nonnavigable waters, *alone;* and, in consequence, that the obstruction, as shown by the appellee, is unauthorized, and therefore a public nuisance. It is clear, of course, that if the statutes last mentioned do confer the rights claimed by the Power Company—the United States having given it sanction and approval in the premises—no nuisance is, or will be, thereby created.

Code, § 3627 et seq., is a codification of the act approved March 12, 1907 (General Acts 1907, pp. 430-442). Under the act of 1903, ante, it appears that, except in the instance the *owner of one bank* of a *navigable* stream has the authority from the United States to dam such stream, the rights intended to be conferred thereby were restricted to *nonnavigable streams.* By the act of 1907, ante, there was amendment of the act of 1903, one effect of which was to eliminate from the *first* section of the act of 1903 the terms whereby the stated restriction to *nonnavigable streams* was interposed. The Code Committee (raised by the joint action of the Houses to consider and revise the work of the Code Commission) wrote Code, § 3627 et seq., which when adopted with the Code of 1907, on July 27, 1907, became the last expressions of the lawmakers on the phase of the subject which now concerns us. So far as we regard it as presently important, section 3627 reads: "All corporations organized under the general laws of this state or heretofore under a special act of the Legislature, and all corporations organized under the laws of

any other of the United States, and which have complied with the Constitution and laws of the State of Alabama as to foreign corporations, and which by their charter have the right to manufacture, supply, and sell to the public, power produced by water as a motive force, shall, after acquiring by purchase or otherwise than by condemnation, a dam site or power site comprising not less than one acre of land upon each and opposite sides of any water course, in addition to other powers conferred by law, have the following right, powers and authority: To acquire by condemnation the lands and rights necessary for the construction and operation of said dam, and works connected therewith or useful thereto, either up or down streams therefrom, and (in the case of nonnavigable streams) to construct and operate at said site, or other point up or down the stream therefrom, and across said stream, a dam, together with all works incident, necessary, or related thereto, and in connection therewith to impound or divert water of any water course or water courses of this state, and to raise higher such dam and to enlarge the works necessary, related or incident thereto; and to construct other works necessary incident or related thereto, either up stream or down stream therefrom, as may be required or deemed expedient by such corporation, in the manufacture and supply of power produced by water as a motive force," etc.

It is seen that the premises feature of the statute (section 3627) contemplates, without restriction to either navigable or nonnavigable streams, the acquirement, otherwise than by condemnation, by the corporation of a dam or power site on both *and* opposite sides of the water course. Then, in enumerating the "rights, powers and authority" conferred, it is provided, *without limitation*, that the corporation conforming to the condi-

tions specified thereinbefore may acquire by condemnation "the lands and rights necessary for the construction and operation of said dam, and works connected therewith or useful thereto, either up or down stream therefrom." Otherwise stated, the powers and rights conferred were and are to condemn all necessary and useful, to the project, lands and right to effect the installation and operation of the dam or power site already secured otherwise than by condemnation, such lands and rights, so necessary and useful to the installation and operation of the dam, being already subject to the right and power of condemnation whether they exist or lie up or down stream from the defined, already secured, dam or power site, that being the undoubted reference signified by the term *therefrom*. Had this phase of the statutory system ended with *therefrom,* we should have no converse views. The grant of rights, powers, and authority would have plainly comprehended both navigable and nonnavigable streams on both *and* opposite sites of which a dam or power site had been acquired otherwise than by condemnation. It is the parenthetical expression, "in the case of nonnavigable streams," that leads the state's representatives to the contention we have stated. Their insistence is, in effect, that the parenthetical expression qualifies, restricts, the just preceding provision with which it is allied by the conjunction *and*.

Reading the section (3627) in the light of its legislative parentage (the Acts of 1903 and 1907), and minding the phrasing as well as the structure of the paragraph enumerating the powers of the corporations thereinabove described, we do not think the view of the state's representatives is at all tenable. The basis for the limitation made by the parenthetical expression is to be found, undoubtedly, in the succeeding provisions where-

by on *nonnavigable streams* the before defined corporation was relieved of the construction and operation of the dam at the exact point whereat the dam or power site had been acquired otherwise than by condemnation. In short, the requirement of the statute is that on *navigable* water ·courses the right to construct and operate the dam is restricted to the point whereat the dam or power site is thus acquired; whereas on *nonnavigable streams* the dam may be constructed and operated at another and different point, either "up or down stream therefrom." A reason for the distinction was, doubtless, suggested by the fact that in the navigable waters of the state the paramount rights ·of navigation of the United States would be the better recognized and conserved by definitely restricting the construction of the dam to a particular location on the water course; whereas, as respects nonnavigable streams, no such factor intervenes.

Certainly, if the lawmakers had intended to confine the grant of the rights defined in section 3627 to nonnavigable streams, they would not have committed so important a limitation to expression in an interposed, in mid-section, parenthetical phrase, especially when preceding the conjunction an unrestricted grant of the rights, etc., therein enumerated is made with respect to all water courses in this state, whether navigable or nonnavigable. The interposition of the stated parenthetical expression at the point it was interposed leaves no room for doubt that its intended purpose and effect was not to limit or restrict the rights and powers thereinbefore granted, which as we have stated comprehend the navigable streams of the state.

Having such statutory warrant, from the state, to construct and operate a dam or power site, subject to the conditions therein defined, and which, it appears,

the Alabama Power Company have complied with, it results that the installation of the dam in question is not a trespass, nor will it be when completed a public nuisance.

The decree to this end is therefore affirmed.

Affirmed.  All the Justices concur.