**BEAUNIT CORPORATION, a corporation, Plaintiff,**

v.

**ALABAMA POWER COMPANY, a corporation, Defendant.**

**Civ. A. No. 67–706.**

United States District Court, N. D. Alabama, S. D.

Nov. 29, 1973.

Drayton T. Scott and Joseph F. Johnston of Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for plaintiff.

Edward S. Allen, and Harold A. Bowron, Jr., of Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

LYNNE, District Judge.

This cause, coming on to be heard, was submitted for the judgment of the Court, without the intervention of a jury, upon the pleadings and the proof. It is noted that no credibility choices have been involved in arriving at the crucial facts. The Court commends the attorneys for the respective parties for extraordinary preparation and presentation of relevant evidence and applicable principles of law.

Upon careful consideration of the massive testimonial and documentary evidence and the oral arguments and exhaustive briefs of able counsel, the

Court proceeds to make and enter the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

(1) Plaintiff is a corporation engaged in the manufacture and sale of textiles and textile fibers and owns a textile manufacturing plant on and contiguous to a portion of the eastern bank of the Coosa River in Talladega County, Alabama.

(2) Defendant is an electric public utility engaged in the manufacture, supply and sale to the public of electricity in the State of Alabama, including electricity produced by water as a motive force at its hydroelectric power dams located on the Coosa River, including those known as Logan Martin Dam and Lay Dam. Logan Martin Dam is located approximately 7.5 miles upstream from plaintiff's plant and Lay Dam is located approximately 3 miles downstream from plaintiff's plant.

(3) By Public Law 436 enacted June 28, 1954 (68 Stat. 302), the 83rd Congress of the United States suspended a portion of the Rivers and Harbors Act of March 2, 1945 (59 Stat. 10), and authorized a comprehensive program for the development of the water resources of the Alabama-Coosa River and tributaries by a series of dams in accordance with the conditions of a license to be issued by the Federal Power Commission pursuant to the Federal Power Act for the use or benefit of interstate commerce, improvement and utilization of water-power development, and for other beneficial public uses, including recreational purposes. Public Law 436 also provided that the operation and maintenance of the dams would be subject to reasonable rules and regulations of the Secretary of the Army in the interest of flood control and navigation.

(4) Defendant filed an application for a license with the Federal Power Commission pursuant to the provisions of Public Law 436 for the authorization, construction, operation and maintenance of a series of dams, including one identified as Kelley Creek and later named Logan Martin Dam, and which application, as later amended, included raising the elevation of the then existing Lay Dam by fourteen feet.

(5) The Federal Power Commission, acting pursuant to such application, issued to defendant a license, dated September 4, 1957, in compliance with the Federal Power Act and Public Law 436 for the construction, operation and maintenance of Project No. 2146, which included the Kelley Creek Dam, later named Logan Martin Dam, located on the Coosa River.

(6) The Coosa River is a navigable stream.

(7) Plaintiff did not intervene in any of the proceedings before the Federal Power Commission and Alabama Public Service Commission set forth in Findings numbered 4, 5, and 6, *supra.*

(8) Defendant is a riparian owner of land on each and opposite sides of the Coosa River in the State of Alabama and upon which land, or a part thereof, defendant has constructed and is presently operating its Logan Martin Dam and, as such, is engaged in the exercise of its rights as a riparian owner in the operation of such dam within the contemplation of Code of Alabama, 1940 (Recomp.1958), Title 10, §§ 178 and 185; Title 38, § 116.

(9) Defendant constructed and is operating its said Logan Martin Dam in accordance with all federal and state laws, regulations, rules, licenses and certificates.

(10) In addition to Logan Martin Dam, defendant owns and operates on the Coosa River, six additional hydroelectric dams, two of which (Weiss Dam and H. Neely Henry Dam) are located above Logan Martin Dam, and four of which (Lay Dam, Mitchell Dam, Jordan Dam and Walter Bouldin Dam) are located below Logan Martin Dam. All of such dams are licensed by the Federal Power Commission and are used by defendant to meet the electric demands of

the public which defendant is under duty to serve with electric power.

(11) Defendant's method of operation of Logan Martin Dam is subject to rules and regulations of, and approval by, the United States Army Corps of Engineers in the interest of navigation and flood control. Such dam is operated in conjunction with other hydroelectric facilities owned by Alabama Power Company and coordinated with other electric generating facilities in various parts of the State of Alabama for the purpose of achieving maximum economy and efficiency in the operation of its electric system consistent with assuring the reliability of such system and consistent with the requirements of the Corps of Engineers.

(12) Logan Martin Dam was constructed and is generally operated as a "peaking plant" for the primary purpose of periodic generation of power at those hours of the day and those portions of the year when the demand for electric power in defendant's service area is greatest. Defendant also operates Weiss Dam and Neely Henry Dam further upstream on the Coosa River, and Lay, Mitchell, Jordan and Bouldin Dams downstream from the plaintiff's plant in the same manner.

(13) Just as plaintiff's plant cannot be economically operated on other than a continuous basis, defendant's Logan Martin hydroelectric facility cannot be economically operated in any fashion other than as a peaking power plant which passes water through its turbines only part of the time. Thus, the flows of water through Logan Martin Dam are intermittent and not continuous, although just as much water is normally released by defendant from the dam annually and monthly as there was accustomed to flow without the dam.

(14) Normally, defendant operates its Logan Martin Dam hydroelectric generating facility on a weekly cycle and the power generated is available for use in daily peak-loan periods for electric power Monday through Friday. As a result, river flow past plaintiff's plant averaged approximately nine hours per day, five days per week. Water also is not consumed or exhausted during the hydroelectric generation process, but is passed through the dam to the area below it.

(15) Defendant's method of operation of its Logan Martin Dam is in accordance with good and accepted electric utility practice. Moreover, when compared with other hydroelectric generating facilities located in the southeastern United States, defendant operates Logan Martin Dam's generating facilities so as to release water from the dam for longer periods of time than is the practice of a substantial number of such other facilities.

(16) The United States Corps of Engineers approved defendant's mode and method of operating its Logan Martin Dam and facilities in accordance with the requirements of defendant's license from the Federal Power Commission and pursuant to the provisions of Public Law No. 436. Such method of operation of the dam and its generating facilities is reasonable.

(17) Defendant's use of the Coosa River incident to its operation and maintenance of Logan Martin Dam and its generating facilities is a reasonable use and a reasonable exercise of its riparian rights.

(18) Plaintiff is a riparian owner on the Coosa River using the river for the purpose of withdrawal of approximately 60 million gallons of water from the river per day when its manufacturing operation is being conducted and for the discharge of waste created from its manufacturing operations.

(19) Plaintiff did not acquire any land rights along the Coosa River prior to the passage in 1945 of Public Law 14, known as the Rivers and Harbors Act (59 Stat. 10). The Howell Mill Shoals Site, referred to in such Public Law 14, and in House Document No. 414 of the 77th Congress referred to in such Public Law 14, is close to the same point on the

Coosa River where defendant's Logan Martin Dam has now been constructed.

(20) In connection with the acquisition of lands and land rights along the Coosa River for its said textile mill, plaintiff acquired a substantial portion of its land and land rights from the United States and the instruments of conveyance from the United States to plaintiff contained the following reservation:

Grantor also reserves the permanent right in aid of any Government project or improvement of navigation on the Coosa River to flood and impound water upon all of the lands herein conveyed lying below elevation 408 feet above mean sea level as heretofore established by the United States Geodetic Survey.

(21) Plaintiff, in connection with its manufacturing operations at its textile plant, empties or discharges into the Coosa River tons of industrial wastes and other wastes, including, among other substances, thousands of pounds of hydrosulfuric acids, zinc and other toxic or deleterious substances and materials each day the plant operates.

(22) Plaintiff's operation of such plant in the most economical manner necessarily involves the discharge of contaminated water.

(23) The Water Improvement Commission of the State of Alabama has determined that the discharges described in Findings 21 and 22, *supra*, constituted a pollution of the said Coosa River.

(24) The water treatment facilities and works revisions described in plaintiff's complaint and for which damages are sought herein, were constructed by plaintiff to enable it to avoid or minimize certain of the harmful effects of its pollution of the Coosa River.

(25) The plaintiff's claim against the defendant is that because of Logan Martin Dam and its operations as a peaking power plant, the flow of the Coosa River past the plaintiff's plant is now intermittent and periodically is decreased to the extent that subsequent to the completion and operation of such dam, plaintiff was required by the Alabama Water Improvement Commission to alter its method of waste discharges into the river which involved the construction of a large waste lagoon and appurtenant facilities. Since plaintiff's plant must operate continuously, the waste lagoon was needed as a place to hold plaintiff's plant effluent and wastes pending its discharge into the river at times when defendant releases water through turbines at Logan Martin Dam so as to cause sufficient flow past plaintiff's plant to adequately dissipate and diffuse the wastes so that such wastes would not be toxic to fish and other living organisms in the Coosa River and comply with the water quality standards prescribed by that Commission.

(26) The supply of water to plaintiff's plant has not been adversely affected by defendant's raising of Lay Dam. The defendant's raising of Lay Dam below the plaintiff's plant shortly after completion of Logan Martin Dam actually raised the normal pool water level of the Coosa River adjacent to plaintiff's plant, and the volume of water normally adjacent to plaintiff's plant has been generally increased rather than decreased. Plaintiff has previously been compensated by defendant for such of its properties as were covered by the waters of the river from the raising of Lay Dam, and plaintiff's waste disposal facilities involved in this action have not been physically damaged by either the raising of the water level behind Lay Dam or the operations of Logan Martin Dam.

(27) Prior to the construction and operation of Logan Martin Dam, plaintiff was able to discharge continuously its wastes into the Coosa River with the permission of the Alabama Water Improvement Commission, because the number of cubic feet of water per second passing the plaintiff's plant was sufficient to dissipate and mix the waste with river water to the extent that water downstream from such plant was generally within the standards of water

quality required by the Alabama Water Improvement Commission. After the construction and operation of Logan Martin Dam, however, the plaintiff could no longer continuously pump its waste into the river, because the river often flowed more slowly than before, and the increase in the height of Lay Dam tended to impede flow below Logan Martin to some extent so that wastes were not absorbed and dissipated to the extent necessary to meet the water quality standard imposed by the Alabama Water Improvement Commission resulting in plaintiff's building the new and expanded waste lagoon and appurtenant facilities, for which it seeks to recover herein, in order to comply with the standards set by the Alabama Water Improvement Commission.

(28) Such waste lagoon and appurtenant facilities constructed after the completion of Logan Martin Dam to comply with the rules of the Alabama Water Improvement Commission resulted in expenditures by the plaintiff of approximately $650,000.00, which it seeks to recover from defendant. This action was filed on December 27, 1967.

(29) Such expenditures for the new waste lagoon and appurtenant facilities set forth in Findings numbered 27 and 28, *supra,* and the damages sought by plaintiff in this action, resulted from plaintiff's need therefor in order to comply with the regulations of the Alabama Water Improvement Commission, when the flow of the Coosa River was intermittently diminished after Logan Martin Dam became fully operative.

(30) Plaintiff first became aware of the intended method of operation of Logan Martin Dam at the time the dam was completed in the summer of 1964. It was notified at that time by the Alabama Water Improvement Commission that it could not continue to use its former method of waste discharge, and the plaintiff retained the services of Hazen & Sawyer, an engineering firm, to design waste or effluent handling facilities which would be acceptable to the Alabama Water Improvement Commission. During the summer of 1965, Hazen &

Sawyer completed its study and made recommendations which were submitted to and approved by the Alabama Water Improvement Commission. Work began on the new facilities in 1965, and they were placed in operation on or before December 19, 1966. The Alabama Water Improvement Commission issued the plaintiff a waste discharge permit on December 30, 1966. The new facilities actually placed in operation, on the basis of which the Alabama Water Improvement Commission issued the new permit, were virtually identical to those called for by the Hazen & Sawyer plans approved in 1965.

(31) During the construction of the plaintiff's new waste lagoon, the defendant, at the request of plaintiff and the Alabama Water Improvement Commission, attempted to provide minimum flows past plaintiff's plant sufficient to disperse acceptably plaintiff's plant's wastes. The flows of the river in terms of cubic feet per second, first reflected the typical levels attributable to operation of Logan Martin Dam as a peaking plant, during the fall of 1966, with typical post-dam Coosa River flows at plaintiff's plant occurring in September and October, 1966.

(32) Mr. Allen, an expert witness called by the plaintiff, and Messrs. Miller and Price, called as expert witnesses by the defendant, were not in conflict regarding the reasonableness and necessity of the defendant's mode of operation of Logan Martin Dam. The evidence establishes the fact that the dam was operated by the defendant in conformity with its Federal Power Commission license and with plans of operation approved by the United States Army Corps of Engineers. The Court finds that such method of operation permits efficient and economic hydroelectric power generation, and also produces a balanced use of the river giving effect to flood control, navigation and recreation, as well as power benefits. In this sense, the defendant's Logan Martin Dam and the other dams operated by it and by the United States Corps of Engineers along the Coosa River and its trib-

utaries comprise a comprehensive development of the river, as determined by the Federal Power Commission in its license for the defendant's Coosa River hydroelectric development. The expert testimony introduced by both sides was also conclusive in showing that the defendant's hydroelectric facilities, including those at Logan Martin Dam, cannot economically be operated in any manner other than as peaking power plants which generate electricity intermittently as required to meet the demands imposed by defendant's electric customers at any particular moment in time. The Court finds that this method of operation was envisioned by the Federal Power Commission at the time the defendant's license was issued, and that such method of operation is consistent with the terms of the license and with the operating procedures approved by the Corps of Engineers.

(33) Plaintiff and defendant are owners of lands along the Coosa River at the sides of their respective operations here involved, and both parties, therefore, are riparian owners. Defendant has not been negligent in the operation of its dam. The reasonableness of plaintiff's use of the river for the discharge of plant wastes is dependent upon its meeting the water quality standards imposed by the Alabama Water Improvement Commission.

(34) Plaintiff purchased and constructed its manufacturing plant in 1948. At that time and at the present, the defendant is engaged in providing information and encouragement to industries which might be considering locating within its electric service area. The defendant did provide information to the plaintiff concerning the area in which plaintiff ultimately located its plant facilities. The defendant in 1947 provided the plaintiff with data on the historical flows of the Coosa River, including the fact that the minimum flow of the river prior to that time was 1300 cubic feet per second. The defendant

neither gave plaintiff any false information, nor did it give any assurance to the plaintiff concerning the ways in which the river might be developed in the future. No confidential relationship existed between the parties.

CONCLUSIONS OF LAW

(1) The Court has jurisdiction of the subject matter of, and the parties to, this action.

(2) No damages were occasioned to the property of plaintiff by the construction, maintenance or operation of defendant's Logan Martin Dam and Lay Dam.

(3) In the alternative, plaintiff's suit to recover its damages is barred by the applicable Alabama Statute of Limitations.

DISCUSSION

Peripheral contentions of plaintiff in its quest for compensation are disposed of by the foregoing findings of fact. The Court now turns to its core insistence that it sustained damages to its property occasioned by the construction, maintenance or operation of defendant's dam.

Placing heavy reliance upon Seaboard Air Line R. Co. v. County of Crisp of State of Ga., 280 F.2d 873 (5th Cir. 1960), plaintiff vigorously argues that § 10(c) of the Federal Power Act [1] in effect creates a new cause of action. Support for this plausible construction of the statutory language is derived from the following abstracts from the opinion in *Seaboard:*

> "We think the district court has misconceived the meaning and purpose of the provision of the Federal Power Act which provided for liability of licensees for damage to property of others,[2] . . .," and

> "The statute imposed a liability upon the county for damage to the Seaboard's embankment." [3]

The interpretation of words is at once a commonplace judicial task and an un-

---

1. 16 U.S.C.A. § 803(c).

2. 280 F.2d at 875.

3. 280 F.2d at 877.

dertaking of delightful uncertainty. It is necessarily an act of creative imagination in which the judge must put himself in the place of the author of those words, here the Congress, and fabricate how it would have dealt with the facts of this case, always remembering that words cover many diverse instances, which cannot be foreseen.

Believing that the provisions of § 10(c) and § 27 [4] of the Federal Power Act should be construed *in pari materia,* this Court is persuaded that it was not the legislative intent to create a new cause of action sounding in tort, but rather to negate the general proposition that the doing properly of that which the law itself expressly authorizes is not actionable as a nuisance.[5]

At the risk of oversimplification, parsing of the statutory language commends a reasonable rule capable of felicitous application. If the holder of a license granted under the authority of the Federal Power Act, by operation of the licensed project, damages that which is treated as the property of others by the laws of the state in which it is situated, and if such operation would constitute a nuisance under the laws of that state, but for the justification of the law's authority, it will be held liable to respond in damages.

It is transparently clear that before Logan Martin Dam became operative plaintiff was performing its waste disposal functions in conformity with the requirements of the Alabama Water Improvement Commission and that after the commencement of its operation it was unable to utilize existing facilities without substantial and expensive improvements. But that is the beginning, not the end, of the inquiry. Pecuniary loss may obviously result from causes other than damage to property.

Inevitably, plaintiff must stand or fall upon its contention that, in the context of the fact findings by the Court, it has an Alabama recognized property right in the continuous and uninterrupted flow of the Coosa River. This is so because the State of Alabama holds legal title to the bed of the Coosa River in trust for the public and the rights of riparian owners to the flow of such river are to be determined by Alabama law.[6]

Having the right to regulate and provide for the use of the navigable rivers within its borders subject only to the paramount right of the United States to control and regulate the use thereof in the exercise of its power under the commerce clause of the Constitution,[7] *a priori,* it has acted within its lawful authority in granting to plaintiff and others the right to construct and operate dams such as the one here involved.[8]

While there is language in opinions of the Supreme Court of Alabama dealing with riparian rights pointing in both directions, it is the conclusion of this Court that in the case *sub judice* Alabama would not follow the "natural flow" concept vigorously espoused by plaintiff and upon which it must ultimately depend in its definition of "property". To the contrary, it would apply the "reasonable use" doctrine, pursuant to which any right of plaintiff to the flow of the river past its lands is subject to and qualified by the right of reasonable use of the rivers by other riparian owners, including defendant.[9]

4. 16 U.S.C.A. § 821.

5. 66 C.J.S. Nuisances § 17.

6. First Iowa Hydroelectric Cooperative v. Federal Power Commission, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946); United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917); State ex rel. Attorney General v. Alabama Power Company, 176 Ala. 620, 58 So. 462 (1912).

7. Federal Power Commission v. Niagara Mohawk Power Corp., 347 U.S. 239, 74 S.Ct. 487, 98 L.Ed. 686 (1954); United States v. Cress, supra; 16 U.S.C.A. § 821.

8. Code of Alabama, Title 10, §§ 178 and 185 (Recompiled 1958); Code of Alabama, Title 38, § 116 (Recompiled 1958).

9. Elmore v. Ingalls, 245 Ala. 481, 17 So.2d 674 (1944); Parsons v. Tennessee Coal, Iron & RR Co., 186 Ala. 84, 64 So. 591

■ The defendant has neither diverted the waters of the Coosa River, nor has it consumed or wasted them. It has merely temporarily detained them for authorized use in generating electric power. Plaintiff's water supply has not been decreased; the same amount of water ultimately flows past plaintiff's lands as was the case before the construction of Logan Martin Dam. Historically, the activities of defendant in detaining, using and then releasing waters have been held to be the right of a riparian owner under Alabama law, when done reasonably and not negligently.[10]

In the view that the Court takes of this case, it is unnecessary to decide whether the right to discharge pollution containing effluents into a public stream may be characterized as a property right even though plaintiff's basic premise is that it has a right to the natural, unimpeded flow of the river for the purpose of assimilating its discharge of industrial wastes therein. The pervasive control over the introduction of pollutants into the waters of this state invested in the Water Improvement Commission by Code of Alabama, Title 22, § 140(3) [Recompiled 1958], apparently undercuts such a theory. It is arguable that expenditures of plaintiff for waste disposal facilities were occasioned by the exaction of such commission and did not proximately result from the construction or operation of defendant's dams.[11]

Precisely, because plaintiff has not proved damage to its *property*, which would be actionable under the laws of Alabama, it may not recover a judgment against defendant.

The alternative approach of the Court resulting in the conclusion that this action is barred by the statute of limitations assumes, *arguendo*, that plaintiff's property was damaged by operation of defendant's dams and that its cause of action may be posited squarely upon the provisions of § 10(c) of the Federal Power Act. Such act contains no statute of limitations; therefore, any cause of action arising thereunder is governed by the applicable Alabama statute of limitations.[12]

Of the opinion that this action fits within the last group of actions catalogued in Title 7, § 26, Code of Alabama (Recompiled 1958), which reads in part as follows:

> Sec. 26. *Limitation of One Year.*— The following must be commenced within one year:
>
> \*   \*   \*   \*   \*   \*
>
> Actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated.

which has been construed by the Supreme Court of Alabama to apply to actions brought for interference with riparian rights,[13] the Court proceeds to a determination of when the instant cause of action predicated upon § 10(c) of the Federal Power Act accrued within the contemplation of Title 7, § 18, Code of Alabama (Recompiled 1958).

■ The complaint herein was filed on December 27, 1967. Operation of Logan Martin Dam commenced and plaintiff became aware of the intended method of its operation as a peaking facility

---

(1914); Ulbricht v. Eufaula Water Co., 86 Ala. 587, 6 So. 78 (1889). Compare:
McCary v. McLendon, 195 Ala. 497, 70 So. 715 (1915);
Hamilton v. Ala. Power Co., 195 Ala. 438, 70 So. 737 (1915);
Ogletree v. McQuaggs, 67 Ala. 580 (1880);
Stein v. Burden, 29 Ala. 127 (1857);
Burden v. Stein, 27 Ala. 104 (1855);
Stein v. Burden, 24 Ala. 130 (1854).

10. Elmore v. Ingalls, supra; Gulf States Steel Co. v. Law, 224 Ala. 667, 141 So. 641 (1932); North Alabama C.I. & Ry. Co. v.

Jones, 156 Ala. 360, 47 So. 144 (1908); Tennessee Coal, Iron and RR Co. v. Hamilton, 100 Ala. 252, 14 So. 167 (1893); Code of Alabama, Title 38, § 116 (Recompiled 1958).

11. See, e. g., City of Eufaula v. United States, 313 F.2d 745 (5th Cir. 1963).

12. Local Trademarks, Inc. v. Price, 170 F.2d 715 (5th Cir. 1948).

13. Parsons v. Tennessee Coal, Iron & RR Co., 186 Ala. 84, 64 So. 591 (1914).

on a necessarily intermittent basis during the summer of 1964. The firm of Hazen & Sawyer was employed by plaintiff to recommend steps to be taken by it to enable it to continue to discharge its industrial wastes into the Coosa River within the requirements of the Alabama Water Improvement Commission. The Hazen & Sawyer study was completed and its recommendations were submitted to and approved by such commission in 1965. In that year work began on the recommended and approved new waste lagoon and such facility became operative on or before December 19, 1966. It is pertinent to note that operations of defendant's Logan Martin power plant in September and October, 1966, caused diminished flows of the nature complained of by plaintiff.

Therefore, the Court arrives at the conclusion that plaintiff's cause of action for damages to its property proximately resulting from the maintenance by defendant of a permanent and unabatable nuisance accrued more than one year before the commencement of this action and is barred by the statute of limitations.

Judgment for defendant will be promptly entered and filed.